Anthony CATROPPA, Plaintiff–Respondent,

v.

METAL BUILDING SUPPLY, INC., Defendant–Appellant.

No. 28946.

Missouri Court of Appeals, Southern District, Division Two.

Oct. 28, 2008.

Abe R. Paul, The Paul Law Firm, P.C., Pineville, MO, for Appellant.

Duane A. Cooper, Evenson, Carlin & Cooper, L.L.C., Pineville, MO, for Respondent.

GARY W. LYNCH, Chief Judge.

Metal Building Supply, Inc. ("Appellant") appeals a judgment from the Circuit Court of McDonald County awarding $26,620.00 in damages to Anthony Catroppa ("Respondent") arising from a breach of contract claim. Appellant claims the amount of damages awarded in the judgment is not supported by substantial evidence and that the trial court erred in admitting an exhibit into evidence. We find no error in the admission of the exhibit, but determine that part of the damage award is not supported by substantial evidence, requiring that the judgment be reversed and remanded with directions.

### Factual and Procedural Background

As the trial court made no findings of fact, "we consider all fact issues to have been found in accordance with the result reached." *Brown v. Mercantile Bank of Poplar Bluff,* 820 S.W.2d 327, 334 (Mo.

App.1991). With that in mind, the facts are as follows.

Respondent is the owner of a sole proprietorship in McDonald County, Missouri, entitled Backyard Concerts. Respondent, through Backyard Concerts, works as a music promoter, and has been in the business of music promotion for thirty-five years.

Appellant is a manufacturer of metal building components. In the spring of 2003, Respondent approached Appellant to build a covered stage for Backyard Concerts so Respondent could put on outdoor concerts "rain or shine." One of Appellant's salesmen provided Respondent with a two-page schematic plan of the proposed stage, which included a corrugated metal roof. The schematic plan showed the roof's ridges running vertically, as is customary in corrugated metal roofs in order to allow water to run off. Appellant subcontracted with Wolf Construction to actually build the stage, while Appellant supplied the building materials. Respondent paid Appellant $4,000 for the materials, and paid Wolf Construction $8,000 for construction of the stage, for a total cost of approximately $12,000.

Before approaching Appellant about building the stage, Respondent had scheduled a concert featuring the heavy-metal bands Skid Row and Slo–Vein for May 24, 2003. Respondent made Appellant aware of the necessity for the stage to be completed by that date. Construction of the stage was completed as scheduled, but the finished product did not conform to the specifications outlined in the schematic, in that the ridges were installed horizontally. When it rained the day of the concert, the water built up in the ridges and began leaking through the seams onto the stage underneath, shorting out the bands' electrical equipment. Both bands refused to perform and, as a result, Respondent was forced to cancel the concert.

Shortly thereafter, Respondent informed Appellant of the problem with the stage, and Appellant conceded that the stage was improperly built. Appellant then attempted to rectify the situation by placing a second corrugated metal roof over the original, this time running the ridges vertically. Appellant did not, however, connect the new roof to the underlying stage structure, and while it no longer leaked water onto the stage below, during inclement weather, the new roof could be lifted up and off by high winds. Respondent attributed this latter problem to a design defect, in that the purloins, the structural element to which the metal roofing is attached, were running vertical instead of horizontal to the pitch of the roof.

Respondent filed suit alleging breach of contract against both Appellant and Wolf Construction. In his original petition, Respondent requested, among other fees and costs, total damages in the amount of $181,380. Of that amount, $36,380 consisted of projected lost profits from the Skid Row and Slo–Vein concert of May 24, 2003; $135,000 consisted of projected lost profits from other concerts occurring after May 24, 2003; and $10,000 consisted of "reasonable costs for repair" of the stage. At some point prior to trial, Wolf Construction was dropped from the lawsuit because of its status as Appellant's sub-contractor.

At trial, in addition to detailing the faulty roof construction, Respondent testified as to the damages he sustained as a result of having to cancel the inaugural concert, including both damages occurring as a result of Respondent's reliance on Appellant's promise to have the stage properly constructed for the May 2003 concert and future lost profits. Respondent's proof of damages included exhibit three, which was prepared by Respondent

for this litigation and which provided, in pertinent part, as follows:

SKID ROW CONCERT ON May 24th, 2003

COST:

| | |
|---|---|
| Skid Row - Band | $ 6,000 |
| Slow Vein - Band | $ 700 |
| Advertising - Joplin | $ 1,300 |
| Advertising - Clear Channel & Eagle | $ 1,800 |
| Printing of Tickets | $ 240 |
| Printing of Posters | $ 990 |
| Johnny on the Spot | $ 900 |
| Ice | $ 300 |
| BBQ - cooked meat & buns | $ 2,000 |
| Lawn Care | $ 300 |
| Labor: | |
|    Security | $ 1,800 |
|    Cooks (2) | $ 140 |
|    Bartender (3) | $ 210 |
|    Ticket Taker (2) | $ 140 |
|    Stage Loaders (8) | $ 560 |
|    Cancellation explainer (2) | $ 140 |
|    JT Huff Sound | $ 1,300 |
| | $18,820 |

| | |
|---|---|
| SIGN REPAIR FROM DELIVERY TRUCK BEING NEGLIGENT (Driver ran over sign) | $ 300 |
| | $19,120 |

PROJECTED SALES:

| | |
|---|---|
| Advanced Ticket Sales 500 @ $15 | $ 7,500 |
| Door Ticket Sales 1500 @ $20 | $30,000 |
| | $37,500 |

| | |
|---|---|
| Liquor Sales 2000 people @ $6 average | $12,000 |
| Food Sales | $ 6,000 |
| | $18,000 |

PROJECTED SALES minus COST plus REPAIRS = LOSS OF REVENUE $55,500 - $19,120 = $36,380

Respondent also requested a refund of his initial purchase price of $12,000 because the stage was useless to him in its current condition. After taking the case under advisement, the trial court issued its judgment against Appellant in the amount of $26,620, plus costs. This appeal timely followed.

### Standard of Review

In a court-tried case, we uphold the judgment of the trial court "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We are bound to "accept as true the evidence and permissi-

ble inferences which may be drawn favorable to the prevailing party, and to disregard the contradictory testimony." *S.G. Adams Printing & Stationery Co. v. Central Hardware Co.*, 572 S.W.2d 625, 628 (Mo.App.1978).

### Discussion

Appellant presents two points for our review. We address them in reverse order.

### Exhibit Three

In its second point, Appellant argues that the trial court erred in admitting into evidence Respondent's exhibit three because it lacked a proper foundation and was based on speculation.

In order to preserve an issue for appeal, a party must object to the alleged error at trial; furthermore, the party must object on the particular grounds he or she wishes to argue on appeal. *Robinson v. Empiregas Inc. of Hartville*, 906 S.W.2d 829, 836 (Mo.App.1995). Such objection must be made with sufficient specificity to inform the trial court why the evidence must be excluded. *Carter v. St. John's Reg'l Med. Ctr.*, 88 S.W.3d 1, 18–19 (Mo. App.2002). "In applying the 'specificity' rule, Missouri appellate courts have ruled that general objections such as 'lacks a foundation,' 'irrelevant,' 'calls for speculation,' 'is self serving,' and the like, are not sufficiently specific objections." *Id.* at 19.

The record in this case establishes that while Appellant did object to the admission of Respondent's exhibit three, it did so only in a qualified and general manner. Appellant specifically objected to only "that portion of [exhibit three] that deals with projected sales, projected liquor sales, and projected lost revenue, because of insufficient foundation and speculation on the part of the witness." Thus, our

review of exhibit three is limited to only that part of the exhibit to which Appellant directed his objection and to the grounds raised in the objection.

■■■ The two objections proffered by Appellant—"insufficient foundation and speculation on the part of the witness"— are general objections. *Id.* "A general objection to 'lack of foundation' will not preserve alleged errors because it fails to direct the trial court's attention to the specific foundational element considered deficient." *Jerry Bennett Masonry, Inc. v. Crossland Const. Co., Inc.,* 171 S.W.3d 81, 99 (Mo.App.2005). Likewise, a general speculation objection fails to inform the trial court and opposing counsel how the proffered evidence is not admissible in the context of the record then before the court such that any needed corrective action can be taken before the case is submitted. *Carter,* 88 S.W.3d at 19. Because Appellant failed to include any specific deficient foundational element in its objection to the trial court and failed to inform the trial court how in the context of the record then before the court that exhibit three was based upon speculation, it has failed to preserve either objection for our review. *Id.* Point denied.

### Damage Award

In its first point, Appellant contends that the trial court erred in awarding judgment in favor of Respondent "because Respondent's evidence was the result of speculation and guesswork and was insufficient to support a judgment in Respondent's favor for lost profits[.]" We partially agree.

■■■ In order to state a cause of action for breach of contract, a party must demonstrate "(1) the making and existence of a valid and enforceable contract between the parties; (2) the rights and obligations of the parties thereunder; (3) a violation thereof by the opposing party; and (4) damages resulting from the breach." *Trotter's Corp. v. Ringleader Restaurants, Inc.,* 929 S.W.2d 935, 941 (Mo.App.1996). In its brief, Appellant takes issue with only the sufficiency of the evidence supporting the damages element.[1]

■■■ The burden of proving that damages exist, and the amount of those damages, rests with the party claiming breach of contract. *Ullrich v. CADCO, Inc.,* 244 S.W.3d 772, 779 (Mo.App.2008). Further, that party must demonstrate the level of damages "with reasonable certainty." *Id.* (citing *Delgado v. Mitchell,* 55 S.W.3d 508, 512 (Mo.App.2001)). Such proof must rise to the level of substantial evidence, which has been defined as "that which a reasonable mind would accept as sufficient to support a particular conclusion, granting all reasonable inference[s] which can be drawn from it." *Jones v. Mo. Highway and Transp. Comm'n,* 878 S.W.2d 521, 523 (Mo.App.1994) (quoting *Farmers and Merchants Ins. Co. v. Harris,* 814 S.W.2d 332, 334 (Mo.App.1991)).

■■■ A plaintiff claiming a breach of contract has available and need not choose between three types of damages—actual, consequential, and benefit-of-the-bargain— as such damages are not necessarily inconsistent with one another; a plaintiff may not, however, be made whole more than once. *Ullrich,* 244 S.W.3d at 779; *Trimble v. Pracna,* 167 S.W.3d 706, 711 (Mo. banc

---

1. While Appellant has phrased his point in terms of the judgment being supported by insufficient evidence of damages, our standard of review, as noted *supra,* requires that the judgment be affirmed unless it is not supported by substantial evidence. Given the definition for substantial evidence, *infra,* this court construes Appellant's point as claiming error in accordance with that standard of review.

2005). Consequently, "if the damages for all of those claims are the same, the damages award merges." *Ullrich*, 244 S.W.3d at 779 (citing *Davis v. Cleary Building Corp.*, 143 S.W.3d 659, 670 (Mo.App.2004)).

"Actual damages are compensatory and are measured by the loss or injury sustained" as a direct result of the wrongful act. *Stiffelman v. Abrams*, 655 S.W.2d 522, 531 (Mo. banc 1983). Consequential damages "are those damages naturally and proximately caused by the commission of the breach and those damages that reasonably could have been contemplated by the defendant at the time of the parties' agreement." *Ullrich*, 244 S.W.3d at 779. Finally, benefit-of-the-bargain damages, also called lost profits damages, are the "net profits a plaintiff would have realized" had the contract not been breached. *Ameristar Jet Charter, Inc. v. Dodson Int'l Parts, Inc.*, 155 S.W.3d 50, 54 (Mo. banc 2005). There are situations in which all three types of damages could be deemed appropriate by a finder of fact, but that is not always the case. *See Davis*, 143 S.W.3d at 670.

In the instant case, Respondent requested all three types of damages, and he was ultimately awarded total damages in the amount of $26,620. However, neither Appellant nor Respondent requested specific findings of fact and the trial court did not offer any *sua sponte*, so this Court has no way of knowing what particular type or types of damages the trial court determined were specifically warranted. Thus, we must accept the trial court's judgment if there is substantial evidence in the record supporting its damage award for any of the three types of allowable damages. *Brown*, 820 S.W.2d at 334.

### Actual Damages

"Damage allowable for roof defects is the reasonable cost of conforming a roof to specifications." *Sides Constr. Co., Inc. v. Arcadia Valley R–II School Dist.*, 565 S.W.2d 761, 768 (Mo.App.1978) (citing *Herbert & Brooner Constr. Co. v. Golden*, 499 S.W.2d 541, 552 (Mo.App.1973)). Here, the only evidence even arguably related to any actual damages suffered by Respondent due to Appellant's breach of contract is Respondent's testimony that he paid a total of $12,000 for construction of the covered stage and that he wanted that $12,000 returned because the stage was useless to him in its present condition. This testimony does not lend any substantive support to a determination of actual damages under the applicable measure of damages. In fact, the record is void of any evidence related to the reasonable cost of conforming the stage roof to the contract specifications. Therefore, there is no substantial evidence in the record supporting any award of actual damages for the breach of contract for deficiencies in the stage roof construction.

### Consequential Damages

Respondent provided an itemized account of the costs he incurred in scheduling and promoting the May 24, 2003 concert, both through his testimony and through his admitted exhibit three. In particular, Respondent testified that he spent $6,700 in retaining the two scheduled bands; $3,100 in total advertising costs both in Joplin and on Clear Channel Eagle, a radio station in Fayetteville, Arkansas; $2,000 in food preparation costs; $1,800 to bring in security guards; $1,300 for sound equipment to be brought in; $990 in printing posters; $900 to bring in portable toilets for the concert; $560 for stage loaders; $300 in ice for the bar; $240 in printing tickets; $210 for bartenders; $140 for ticket takers; $140 for cooks; and $140 for two people to wait at the door the night of the concert to tell people it

was canceled. Respondent further stated that Appellant's workers had run over a sign on Respondent's property when they delivered the materials for the stage, costing him an additional $300.[2] These expenses totaled $19,120.

Moreover, a representative of Appellant testified that Appellant knew of the impending concert and the necessity for the stage to be ready by May 24, 2003. As Appellant knew of Respondent's intended use for the stage—holding concerts "rain or shine"—the cancellation of the concert due to rain leaking through the defective roof and the subsequent losses incurred in promoting and preparing to conduct that concert were reasonable and foreseeable consequences of Appellant's breach. *See Ullrich*, 244 S.W.3d at 779. There was, thus, substantial evidence presented at trial to support an award of consequential damages in the amount of $19,120.

### *Lost Profits*

The parties in this case have focused extensively—and in Appellant's case, exclusively—with the issue of Respondent's claim for lost profits. Respondent asked for all three types of available damages in his original breach of contract claim, as was his right to do, and while it is conceivable that a situation could arise in which all three types of damages would be separately appropriate, such was not the case here.

■■■ The existence of lost profit damages must be demonstrated "with reasonable certainty," and "must rest upon more than mere speculation." *Ameristar*, 155 S.W.3d at 55. Moreover, "in calculating lost profits damages, lost revenue is estimated, and *overhead expenses tied to the production of that income are deduct-*

*ed from the estimated lost revenue.*" *Id.* (emphasis added). As noted on exhibit three, Respondent claimed he lost $36,380 in profit because he had to cancel the Skid Row concert due to the leaks in the stage roof. Respondent premises the income side of this claim on one source of actual income—$7500 in advance ticket sales, which he had to refund—and three sources of estimated income: $30,000 in door or gate receipts, $12,000 for liquor sales, and $6,000 in food sales. Appellant claims that the latter three items of projected income was based upon "sheer speculation." We disagree with Appellant on the first two, but agree with Appellant on the third item.

■■■ Respondent testified that he had extensive experience in presenting concerts. Based upon that experience, he estimated that door or gate ticket sales would reasonably be expected to be three times advance ticket sales. While Appellant in its brief points to many factual reasons why the trial court should not believe Respondent's testimony, the credibility of that testimony and the weight to afford that testimony is within the province of the trial court, which we defer to on appeal. *In re Marriage of Fisher*, 258 S.W.3d 852, 856 (Mo.App.2008). While projecting income may be imprecise, so long as such projections are based upon established facts and reasonable extrapolations from those facts, they are premised upon substantial evidence. Here, there was evidence that the advance ticket price was $15 per ticket; that Respondent had sold 500 advance tickets; that the door or gate ticket price was $20 per ticket; and that 3 times advance ticket sales was a reasonable projection of the number of door or gate tickets that would have been sold had the concert not been cancelled. This was substantial evidence supporting

---

**2.** Appellant did not object to this evidence at trial and does not challenge in this appeal a damage award in the judgment based upon this damage item.

that Respondent with reasonably certainty lost $30,000 in door or gate ticket sales, in addition to the $7,500 in advance ticket sales, which he had to refund when the concert was cancelled.

Likewise, Respondent's projected income from liquor sales was based upon substantial evidence. There was substantial evidence, as discussed in the preceding paragraph, supporting an attendance of 2,000 people at the concert. Respondent testified that the concert was scheduled to last four hours and that, based upon his extensive experience in promoting and presenting concerts, each attendee would average purchasing two drinks during that time period. He further testified that the charge for each drink was set at $3. This was substantial evidence supporting Respondent's claim that he lost $12,000 in income from liquor sales.

On the other hand, the only evidence as to any lost income from food sales is the $6,000 line item on exhibit 3. There is no evidence in the record as to how this amount was calculated by Respondent. This court does not believe that simply placing a figure on a piece of paper transforms that figure into substantial evidence. Reasonable minds would not consider a figure typed on paper by a party standing alone and without any other evidence of support or explanation as sufficient proof of lost income from food sales. *See Jones,* 878 S.W.2d at 523. Without any substantial evidence supporting lost income from food sales, there is no substantial evidence supporting a determination by the trial court that Respondent lost any profit from food sales.

■ In considering Respondent's claim for lost profits, we now turn to the expense side of the calculation. Respondent's actual costs incurred in presenting this concert were discussed *supra* under consequential damages and amounted to $18,820. How-

ever, to the extent that these out-of-pocket expenses may be less than the profit Respondent would have generated but for canceling the concert, they also must be considered in determining Respondent's lost profits. We note that Respondent can only recover for them once, either as consequential damages or as an expense in calculating lost profits. *See Ullrich,* 244 S.W.3d at 779. Thus, based upon gross ticket sales of $37,500 and out-of-pocket costs to generate that income of $18,820, Respondent lost profits in the amount of $18,680.

■ Even though Respondent presented substantial evidence of $12,000 in lost income from liquor sales, he failed to present any evidence of his expenses tied to the product cost in producing that income. When asked the cost of the liquor supplies, the Respondent responded: "The cost, exact cost, I don't have with me." Respondent did testify that he tapped six kegs of beer at a cost of $70–75 per keg. There was no evidence, however, connecting this testimony to the total cost of the product necessary to generate the projected $12,000 in income. Without any substantial evidence to support product costs for the liquor sales, there is no substantial evidence to support a determination by the trial court that Respondent lost any profits on liquor sales.

From the above and foregoing, Respondent's claim for lost profits from the Skid Row concert is only supported by substantial evidence in the amount of $18,680, which, even when the $300 sign damage is added thereto, is still less than Respondent's consequential damages of $19,120. As such, it merges into the consequential damage determination and, consequently, the Respondent is not entitled to any damages for lost profits. *Id.*

### Damage Award Only Partially Supported by Substantial Evidence

Because the trial court's judgment for damages in the amount of $26,620 is only supported by substantial evidence of Respondent's consequential damages in the amount of $19,120, Appellant's first point is granted to the extent of the amount of the difference, which is $7,500.00.

### Decision

The trial court's judgment as to the amount of damages is reversed, and the case is remanded to the trial court with directions to enter judgment in accordance with this opinion. In all other respects, the judgment is affirmed.

BURRELL, P.J., and RAHMEYER, J., concur.