WILLIAMS CONSTRUCTION, INC.,
Plaintiff–Respondent,

v.

WEHR CONSTRUCTION, L.L.C.,
Defendant–Appellant.

No. SD 31542.

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 8, 2012.

Richard E. Walters, Springfield, MO, for Appellant.

Jason Coatney, Springfield, MO, for Respondent.

JEFFREY W. BATES, J.

Wehr Construction, L.L.C. (Wehr) appeals from a judgment awarding damages for breach of contract to Williams Construction, Inc. (Williams). Wehr contends the trial court erred by: (1) finding Wehr's termination of a purchase order was a breach of the agreement when Williams' earlier noncompliance with the agreement's terms was the first breach; and (2) awarding damages for lost profits and overhead expenses. The trial court correctly determined that there was a breach of contract by Wehr and that Williams sustained a $30,000 loss of profits from that breach. The trial court's award of an additional $5,000 for overhead expenses, however, was not supported by the evidence. Therefore, we affirm the judgment as modified. The cause is remanded with directions to enter an amended judgment in Williams' favor in the net amount of $15,028.

In this court-tried case, our review is governed by Rule 84.13(d) and the principles set out in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).[1] "We must affirm the trial court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." *Salem United Methodist Church v. Bottorff*, 138 S.W.3d 788, 790 (Mo.App.2004). The trial court's judgment is presumed correct, and an appellant has the burden of proving it erroneous. *Surrey Condominium Ass'n, Inc. v. Webb*, 163 S.W.3d 531, 535 (Mo.App.2005). We accept all evidence and inferences therefrom in the light most favorable to the prevailing party; all contrary evidence and inferences are disregarded. *Essex Contracting, Inc. v. Jefferson County*, 277 S.W.3d 647, 652 (Mo. banc 2009); *Strobl v. Lane*, 250 S.W.3d 843, 844 (Mo.App.2008). The credibility of the witnesses and the weight to be given to their testimony is for the trial court, which is free to believe none, part or all of the testimony of any witness. *Christian Health Care of Springfield West Park, Inc. v. Little*, 145 S.W.3d 44, 48 (Mo.App.2004). We defer to the credibility determinations of the trial court "because it is in a better position to not only judge the credibility of witnesses directly, but also their sincerity and character as well as other trial intangibles which may not be completely revealed by the record." *Tichenor v. Vore*, 953 S.W.2d 171, 174 (Mo.App.1997); Rule 84.13(d)(2). The following summary of the facts has been prepared in accordance with these principles.

Williams sells metal building packages, and Wehr constructs buildings. On October 18, 2004, Wehr executed Purchase Order No. 003 (the purchase order), requesting that Williams provide four pre-engineered steel buildings for a total cost of $299,435. The four buildings included a warehouse, retail strip center, convenience store and car wash. These buildings were to comprise the "Kansas Plaza," located at the corner of Kansas Expressway and Sunset Boulevard in Springfield, Missouri (hereinafter re-

---

1. All references to rules are Missouri Court Rules (2012).

ferred to as the project). In connection with the project, Williams submitted an invoice to Wehr to cover the "mobilization" fee for $14,972, which Wehr paid in full in early November.[2] On November 11, 2004, Wehr notified Williams by letter that Wehr was placing the project on hold.

In a letter dated December 9, 2004, Wehr canceled the purchase order. Wehr explained that it had been "forced to reassess costs" to build the project and "with regrets [is] forced to cancel the order" because the "costs of construction materials, especially steel, have increased tremendously." Thereafter, Williams stopped its work on the project.

In a letter dated December 29, 2004, Williams acknowledged Wehr's cancellation. Williams stated that, according to the terms and conditions of the purchase order, "project cost does not appear to be a just reason" for termination. Instead, Williams stated that the "Termination by The Owner for Convenience" clause applied. Cancellation pursuant to that clause entitled Williams to receive payment for work executed and costs incurred by reason of the termination, along with reasonable overhead and profit on the work not executed. Williams stated that it was owed $60,986.25 because of the cancellation, calculated as follows: (1) $35,000 for lost profit and overhead expenses; and (2) $25,986.25 owed to Williams' supplier, American Buildings Company (ABC) for engineering services. After reducing that sum to account for the prior $14,972 mobilization fee payment, Williams demanded

payment in the amount of $46,014.25 on the purchase order.

Wehr responded in a January 3, 2005 letter. Wehr acknowledged that it paid $14,972 for "5% mobilization" and admitted that amount was "quite fair and standard procedure in the construction industry," but Wehr denied that it owed any additional amount on the purchase order. In February 2005, Williams again made a demand for payment, but Wehr refused. Wehr completed the project with steel buildings purchased from a different supplier.

Williams sued Wehr for breach of contract, and Wehr filed a counterclaim seeking the return of its $14,972 payment. In May 2011, the case was tried to the court. The only witnesses were Williams' president, David Williams (Mr. Williams), and Wehr L.L.C. member Scott Wehr (Mr. Wehr). After hearing the witnesses' testimony and considering a number of exhibits, the trial court found in favor of Williams on its breach of contract claim and against Wehr on its counterclaim.[3] The court found that Williams had sustained damages in the amount of $20,027.97.[4] The court denied Williams' request for $25,986.25 to pay ABC. This appeal followed. Additional facts necessary to the disposition of the case are included below as we address Wehr's two points on appeal.

## Point I

Wehr's first point challenges the trial court's determination that Wehr breached the agreement by terminating the pur-

2. The $14,972 mobilization fee was 5% of the anticipated total project cost of $299,435.

3. Wehr's counterclaim alleged that the $14,972 it initially paid Williams was for shop drawings that were never received. The court found that "[a]s partial payment of the agreement, [Wehr paid] the sum of $14,972.00. The court does not find that these sums were for shop drawings." Wehr does not challenge this finding on appeal.

4. The trial court's damage calculation contained a three-cent mathematical error which will be corrected on remand.

chase order. The following facts are relevant to this issue.

Paragraphs 5 and 10 of the purchase order apply to Williams as "Supplier" and Wehr as "Contractor." Paragraph 5 states:

All submittals (shop drawings, samples, cut sheets, etc. . . . ) as required by the Contract Documents, are due in Contractor's office no later than three (3) weeks from the date of this Agreement. Included shall be all anticipated lead times involved with submittals. Failure to comply with the above unless approved by Contractor in writing, may impose liability for job delays.

Paragraph 10 states:

Contractor may at any time terminate this Purchase Order after Two (2) days written notice to Supplier at his last known mailing address for either of the following reasons:

a. Material not in compliance with the specifications or meeting Architect's approval.

b. Failure by Supplier to deliver the specified material in a timely manner or as required by the construction schedule.

In Wehr's letter dated January 3, 2005 refusing to pay Williams, Wehr admitted to receiving "2 of the 4 submittals."

Wehr signed the purchase order on October 18, 2004. The project was to be completed in phases. The order of construction was the warehouse, retail strip center, convenience store, and then the car wash. ABC's engineers were supposed to prepare the engineering plans for the buildings. It took approximately six weeks from the date of the order for ABC to generate engineering plans. Williams provided to Wehr an engineering development design document, which was used by Wehr to obtain a foundation permit, and

erection blueprints for the warehouse. At the time the project was canceled, ABC had done the following engineering design work on the project: (1) $7,785 on the warehouse; (2) $4,000 on the retail strip center; (3) $2,000 on the convenience store; and (4) $898 on the car wash. All of the engineering work, drawings and specifications had been completed for the warehouse. Because these drawings and specifications were specific to an ABC building, they could not be used to build a steel building from another supplier. Mr. Williams testified that he did not provide all four submittals and "erection drawings" to Wehr within three weeks, as required by Paragraph 5, because it was impossible to do so within that time frame.

In Point I, Wehr contends the trial court erred in holding that Wehr's termination of the purchase order was a breach of the agreement. Wehr argues that Williams was actually the first party to breach, which authorized Wehr's termination of the purchase order. According to Wehr, it properly terminated the purchase order "for non-compliance, in that Williams did not provide building and erection drawings and other submittals within three (3) weeks of October 18, 2004." We find no merit in this argument.

Wehr's argument is based upon the first-to-breach rule, which "holds that a party to a contract cannot claim its benefit where he is the first to violate it." *R.J.S. Sec., Inc. v. Command Sec. Services, Inc.*, 101 S.W.3d 1, 18 (Mo.App. 2003). Only a material breach, however, may excuse the other party's performance. *Id.* "Whether a breach is material or immaterial is a question of fact." *Campbell v. Shaw*, 947 S.W.2d 128, 132 (Mo.App. 1997); *Classic Kitchens & Interiors v. Johnson*, 110 S.W.3d 412, 417 (Mo.App. 2003); *see, e.g., Schaefer v. Rivers*, 965 S.W.2d 954, 958 (Mo.App.1998) (substan-

tial, though incomplete, performance of contractual duties with only slight deviations from the contract is sufficient evidence of performance by party seeking to enforce the agreement).

Wehr argues that "[f]ailure to provide the drawings in this case was a material breach because had Wehr wanted to move forward with the project, it could not have done so without the drawings in hand to submit for architectural approval." That argument disregards the trial court's express and implied factual findings. Wehr's own letter of December 9, 2004 clearly specified that it was "forced to cancel the order" because the "costs of construction materials, especially steel, have increased tremendously." The trial court made a specific finding that Wehr canceled the purchase order on December 9, 2004 "because of cost issues." The court noted that Wehr's letter did not rely upon Williams' failure to provide shop drawings as a basis for its decision to terminate. Therefore, the court concluded that Wehr's termination of the purchase order was a breach of contract. These findings are amply supported by the evidence. Wehr's stated reason for terminating the project was increased construction costs, particularly steel. Wehr had no intention of going forward with the project with Williams as the contractor, using steel supplied by ABC. In fact, the project was completed at a later date by a different contractor using steel from a different supplier. Therefore, the trial court implicitly found that Williams' failure to provide shop drawings was not a material breach of the agreement. *See* Rule 73.01(c) (all fact issues upon which no specific findings are made are considered as having been found in accordance with the result reached); *Classic Kitchens,* 110 S.W.3d at 417. We must defer to the trial court in matters of credibility. *Tichenor v. Vore,*

953 S.W.2d 171, 174 (Mo.App.1997); Rule 84.13(d)(2). Point I is denied.

## Point II

Wehr's second point contends the trial court erred in holding that Williams was entitled to recover $35,000 in damages for lost profits and overhead expenses. The following facts are relevant to this point.

At trial, Mr. Williams testified that Wehr's termination of the purchase order caused Williams to lose a total of $35,000 in lost profits and overhead expenses. Mr. Williams, who had been in the construction business for at least 35 years, gave the following explanation of how that sum had been calculated:

Q. ... Can you please break out that 35,000? I'm trying to understand what portion of that is profit and what portion is overhead.

A. I don't have my estimate in the—to my knowledge here. I'm guessing I would have put on 299,435, something into eight to ten percent profit range. So if it was ten percent, that'd be in round numbers $30,000.

Q. Okay.

A. If my math is good.

Q. So your—your best—you don't have any documents, but your best thing you're saying today, as we sit here today, is of the 35,000, 30 is—30,000 is your claim of lost profits?

A. No. I'm saying that I would have profited the project at 30,000. Okay.

Q. Okay.

A. But I would have also put overhead and labor on there as part of my effort to perform various functions on the job. And my work from a standpoint of ordering the buildings is considerable up front. Upon deliv-

ery it's more of a—a courtesy between the site and the factory to make sure that missing materials or explanations.

Mr. Williams testified that his overhead consisted of "labor [and] the rent at [your] place and those type of overhead expenses." Mr. Williams explained that "it takes some knowledge to order a building [and] man hours to do it." There was no further description of Williams' claim for overhead expenses or any explanation of how the $5,000 overhead figure had been calculated. The trial court awarded Williams $35,000 in damages for lost profits and overhead.[5]

Wehr argues the trial court erred in awarding Williams $35,000 for two reasons: (1) Williams failed to meet its burden of establishing lost profits with reasonable certainty; and (2) Williams presented insufficient evidence to support the award of $5,000 for overhead expenses. While the first argument is unpersuasive, the second argument has merit.

 "In an action for breach of contract, a plaintiff may recover the benefit of his or her bargain as well as damages naturally and proximately caused by the breach and damages that could have been reasonably contemplated by the defendant at the time of the agreement." *Birdsong v. Bydalek*, 953 S.W.2d 103, 116 (Mo.App. 1997) (internal citations omitted); *see also Catroppa v. Metal Bldg. Supply, Inc.*, 267 S.W.3d 812, 818–19 (Mo.App.2008) (breach of contract damages include those for actual, consequential and benefit of the bargain or lost profits). In proving an award of lost profit damages, "a party must produce evidence that provides an adequate basis for estimating the lost profits with reason-

able certainty." *Ameristar Jet Charter, Inc. v. Dodson Int'l Parts, Inc.*, 155 S.W.3d 50, 54 (Mo. banc 2005). "The claimant must establish the fact of damages with reasonable certainty, but it is not always possible to establish the amount of damages with the same degree of certainty." *Id.* at 55. A business owner's "testimonial evidence [is] sufficient to provide the trier of fact with a rational basis for estimating damages to the plaintiff, including lost profits." *Smith Moore & Co. v. J.L. Mason Realty & Inv., Inc.*, 817 S.W.2d 530, 534 (Mo.App.1991) (citation omitted); *see, e.g., Parshall v. Buetzer*, 195 S.W.3d 515, 523 (Mo.App.2006) (business owner's testimony that "based on his many years' experience in the concrete business, he would have earned fifteen per cent profit on that job ... established the fact of lost profits with reasonable certainty, and was sufficient to support the amount"). In addition to lost profits, fixed overhead expenses that would have been paid from the gross revenue generated by a breached contract can be recovered if such expenses are proven by substantial evidence. *See, e.g., American Laminates, Inc. v. J.S. Latta Co.*, 980 S.W.2d 12, 24 (Mo.App.1998); *Scullin Steel Co. v. PAC-CAR, Inc.*, 748 S.W.2d 910, 914–15 (Mo. App.1988).

Here, given Mr. Williams' 35 years of experience in the construction industry, his testimony that he would have made a $30,000 profit on the project provides a rational basis for estimating damages. *See Parshall*, 195 S.W.3d at 523; *see also Gateway Foam Insulators, Inc. v. Jokerst Paving & Contracting, Inc.*, 279 S.W.3d 179, 186 (Mo. banc 2009) (citing *Parshall*, noting that a business owner's testimonial evidence is sufficient to pro-

---

**5.** In the judgment, that sum was reduced by Wehr's earlier partial payment of $14,972. The judgment should have been for $20,028.

The court made a three-cent mathematical error and entered judgment in Williams' favor for $20,027.97.

vide a rational basis for estimating lost profits); *Catroppa,* 267 S.W.3d at 819–20 (support for estimating lost profit damages included party's testimony that he had extensive experience in industry). Therefore, Williams met its burden of proving its lost profits with reasonable certainty. *See Parshall,* 195 S.W.3d at 522–23.

 The same cannot be said about Williams' additional request for $5,000 in overhead expenses. The only two overhead expenses mentioned in Mr. Williams' testimony were the labor involved in ordering the four metal buildings and Williams' fixed rent expense. The labor cost necessarily would have been incurred anyway to earn the $30,000 in profits that the project was expected to generate. A party cannot recover both its lost profits and the overhead expenses that are tied to the production of that profit. *Catroppa,* 267 S.W.3d at 819–20. Thus, Williams was not entitled to recover for the cost of the labor involved in ordering the metal buildings. In addition, Williams presented no evidence about what part, if any, of its fixed rent expense would have been paid from the project's gross revenues if it had gone forward. Thus, Williams did not present sufficient evidence to support an award for this fixed overhead expense. *See American Laminates,* 980 S.W.2d at 24; *Scullin Steel,* 748 S.W.2d at 914–15. The court erred in awarding Williams $5,000 for overhead expenses. Point II is denied in part and granted in part.

In sum, the trial court correctly entered judgment in Williams' favor on its breach of contract claim. The judgment amount, however, should have been $15,028 ($30,-000 lost profits minus the $14,972 payment by Wehr). Rule 84.14 directs us to finally dispose of an appeal unless justice otherwise requires and, to that end, authorizes us to "give such judgment as the court

ought to give." *Id.* Therefore, we modify the judgment to award Williams damages of $15,028. The cause is remanded with directions for the trial court to enter an amended judgment for Williams in that amount. The judgment, as modified, is affirmed in all other respects.

DANIEL E. SCOTT, P.J. and DON E. BURRELL, C.J., CONCUR.