
RAYMOND BRUCE HERSCHEND,                )
                                                                        )
    Petitioner/Appellant/Cross-Respondent,        )    Nos. SD33116 and SD33134
                                                                        )        Consolidated
vs.                                                                  )    Filed:  September 30, 2015
                                                                        )
DIANNA VEE HERSCHEND,                        )
                                                                        )
    Respondent/Respondent/Cross-Appellant.    )

### APPEAL FROM THE CIRCUIT COURT OF BARRY COUNTY

### Honorable Robert J. Foulke, Associate Circuit Judge

**<u>AFFIRMED IN PART, REVERSED IN PART AND REMANDED</u>**

Raymond Bruce Herschend ("Bruce") and Dianna Vee Herschend ("Dianna")[1] have each appealed the trial court's November 20, 2013 "Judgment."  *See* Rules 81.04(c) and 84.04(i).[2]  Bruce's appeal (SD33134) and Dianna's appeal (SD33116) were consolidated for purposes of this opinion.  Bruce raises two points of alleged trial court error, and Dianna raises four points of alleged trial court error.  We affirm in part, and reverse in part with a remand.

---

[1] Because the involved parties share the same surname, for ease of reference, we refer to the parties by their first names; we refer to Raymond Bruce Herschend as "Bruce" as used in the record.  We mean no familiarity or disrespect.

[2] References to rules are to Missouri Court Rules (2015).

## Factual and Procedural Background

Viewed in the light most favorable to the judgment, *Walker v. Lonsinger*, 461 S.W.3d 871, 874 (Mo.App. W.D. 2015), the following facts were adduced at trial.

Before Bruce and Dianna married on August 20, 2000, Bruce owned differing interests in Adventure Creations, Inc. a/k/a Talking Rocks Cavern and Herschend Family Entertainment Corporation ("HFE").

Prior to her marriage to Bruce, Dianna held a variety of employment positions, including dog grooming, two years in the military, assistant manager of cave tour businesses in Texas and Missouri, and assistant manager of an apartment complex in Oklahoma. She completed education up to her sophomore year of high school, but subsequently obtained her GED and some college credits.

In 2005, the HFE board of directors developed Covenant Capital, LP ("Covenant"), a diversified organization, to pay dividends to shareholders and put money into a financial pool so shareholders would have equity outside of HFE's core business. Covenant is completely funded by HFE dividends, and Bruce has no control over the value of the stock or when dividends are paid. The HFE board controls Covenant, and only shareholders in HFE can hold an interest in Covenant. A majority vote of six trustees determines when retained earnings will be distributed to shareholders. Bruce is not a trustee, has no decision-making power, no ability to influence where money is invested, and no control over distributions.

During their marriage, Bruce and Dianna created and acquired interests in several businesses: (1) a 47-percent interest in Butterfly Palace, which also included Butterfly Creations LLC, Natural Edutainment, Emerge LLC, Butterfly Cathedral, and Pente Teknon LLC; (2) a 100-percent interest in RBD Marketing LLC, which owned the building and real estate on which

2

Butterfly Cathedral operates; and (3) a 45-percent interest in Tia's World LLC, which owned the building and real estate from which Predator World Zoo operated.

These businesses performed poorly and incurred significant debts, which were guaranteed personally by Bruce and Dianna. To capitalize and expand these businesses, Bruce utilized HFE dividend money from Covenant and other non-marital assets, the couple made personal loans to the businesses, and the businesses borrowed money from Bruce's family and other non-business owners.

Following acrimony in their marriage, Bruce and Dianna separated on October 18, 2011. In November 2011, before Bruce and Dianna were divorced, Bruce began a sexual relationship with Leonora Lang ("Lang"), and began taking Lang to family and work functions.

A three-day trial was held beginning on September 25, 2013. Bruce presented evidence regarding, in relevant part, the businesses he and Dianna created and acquired, personal and business debts, the nature of his finances before and during the marriage, the extent and value of joint marital property, Dianna's business management practices, and future business and employment opportunities. Larry Ellison ("Ellison"), a certified public accountant, testified on behalf of Bruce. Ellison, in valuing the joint businesses, took the fair market value of the businesses, subtracted debts to outside creditors and debts owed by the business to Bruce and Dianna and their children, in order to arrive at the net asset value of the portion of the businesses that Bruce and Dianna owned, for a net deficit value of $4,314,000.

Dianna presented evidence regarding, in relevant part, the nature and extent of joint marital property and businesses, legal fees incurred during the divorce proceedings, the nature of her education and business experience, and her past and prospective monthly expenses. Included with that evidence was Exhibit CC, Dianna's Income and Expense Statement, listing her gross

3

income at $2,150 and her average monthly expenses at $14,462.11. Exhibit CC was admitted into evidence without objection.

On November 30, 2013, the trial court entered its Judgment allocating the marital and non-marital assets of the parties, dividing the marital debt, and awarding Dianna maintenance and attorney fees. The trial court found marital misconduct by Bruce, arising out of his relationship with Lang.

The trial court awarded to Bruce his non-marital property in the amount of $13,706,437, consisting of his interest in his family's businesses, investments, and trusts; two tracts of real estate; a vehicle and tractor; and various other personal property. Dianna was awarded her non-marital property in the amount of $17,100, consisting of jewelry and other personal property.

The trial court, finding Ellison credible, awarded to Bruce as marital property all of the parties' joint businesses, the marital home, various bank accounts, life insurance policies, two vehicles, promissory notes, and various other personal property with a value of $4,921,798.10. Bruce was also to be responsible for marital debt totaling $5,589,986.30, thus reducing the value of the marital property he was awarded to a *negative* $1,646,317.90.

Dianna was awarded marital property totaling $357,551.54, consisting of a horse trailer, two vehicles, bank account, life insurance policy, and 28-30 horses. Dianna was ordered to pay marital debts of $52,408.57, reducing the value of her marital property to $305,142.97.

The trial court determined Dianna's reasonable needs to be $8,124 per month and awarded maintenance to Dianna in the amount of $6,560 per month for a duration of thirteen years. Dianna also received an award for attorney fees in the amount of $91,900.93. These consolidated appeals followed.

4

On appeal, Bruce asserts in two points that: (1) the trial court's award of maintenance to Dianna was not supported by substantial evidence; and (2) the trial court abused its discretion in awarding Dianna attorney fees. Dianna asserts in four points that: (1) the trial court erroneously applied the law in classifying approximately one million dollars in Bruce's Covenant account as Bruce's separate non-marital property; (2) the trial court erred in finding that joint businesses owned by Bruce and Dianna had a negative value of $3,396,000 while also assigning the value of certain notes owed by the businesses at a zero value; (3) the trial court erroneously applied the law in valuing Butterfly Palace and Predator World Zoo; and (4) the trial court erroneously applied the law in terminating maintenance in thirteen years.

The issues for our consideration are:

1.     Was the trial court's award of maintenance to Dianna supported by substantial evidence?

2.     Did the trial court abuse its discretion in awarding Dianna attorney fees?

3.     Did the trial court erroneously apply the law in classifying approximately one million dollars in Bruce's Covenant account as separate non-marital property?

4.     Did the trial court abuse its discretion in finding that joint businesses owned by Bruce and Dianna had a negative value of $3,396,000 while also assigning the value of certain notes owed by the businesses to Bruce at a zero value?

5.     Did the trial court erroneously apply the law in valuing Butterfly Palace and Predator World Zoo?

## Overall Standard of Review

We will affirm the trial court's judgment of dissolution of marriage unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We view the evidence and permissible inferences therefrom in the light most favorable to the trial court's judgment and disregard all contrary evidence and inferences. *Maninger v. Maninger*, 106

5

S.W.3d 4, 9 (Mo.App. E.D. 2003). The court is free to disbelieve any, all, or none of the evidence, and we may not re-evaluate the evidence through our own perspective. *J.A.R. v. D.G.R.*, 426 S.W.3d 624, 627 (Mo. banc 2014).

### Bruce's Point I: Dianna's Maintenance Award Not Supported by Substantial Evidence

Bruce argues the trial court erred in awarding Dianna maintenance in the amount of $6,560 per month because the trial court's findings regarding a portion of Dianna's needs were not supported by substantial evidence.

We will not reverse a trial court's award of maintenance absent an abuse of discretion by the trial court. *Woodard v. Woodard*, 201 S.W.3d 557, 561 (Mo.App. E.D. 2006). We will find abuse of discretion "only when the ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of careful consideration." *Bright v. Bright*, 429 S.W.3d 517, 520 (Mo.App. W.D. 2014) (internal quotation and citation omitted). We have held that an award of maintenance that is not supported by substantial evidence rises to the level of abuse of discretion. *See In re Marriage of Ross*, 231 S.W.3d 877, 886 (Mo.App. S.D. 2007).

An award of maintenance may include "a reasonable amount above the itemized expenses of the party seeking maintenance to meet unexpected day-to-day expenses which, given their nature, may be reasonable under the circumstances, yet are incapable of specific itemization." *Id.* at 886. While an exact mathematical correlation between the reasonable needs of the requesting party and the maintenance ordered is not required, *see id.*, the trial court does not have unfettered discretion, and maintenance awards must be limited to the "demonstrable needs of the party receiving support and not to provide an accumulation of capital." *Bryant v. Bryant*, 351 S.W.3d 681, 690 (Mo.App. E.D. 2011) (internal quotation and citation omitted). A

6

maintenance award that substantially exceeds the amount of the monthly needs of the seeking spouse is not supported by substantial evidence and represents an abuse of the trial court's discretion. *Id.*

Bruce concedes that maintenance for Dianna was appropriate and challenges only a portion of the trial court's maintenance award. We address his arguments in sequence.

Bruce first argues that the trial court's finding that Dianna's reasonable needs include $2,500 per month for rent or mortgage payment is not supported by substantial evidence.

We note that Dianna's Income and Expense Statement, Exhibit CC, which requested $4,993.00 for "Rent or mortgage payments," was introduced without objection from Bruce, and Bruce made no motion to strike the exhibit as unsupported following cross-examination or after the Judgment was entered. Further, Dianna testified that her expense request was premised on living in a "large house."

Bruce relies on *Childers v. Childers*, 26 S.W.3d 851 (Mo.App. W.D. 2000) for the proposition that where an income and expense statement is

> disputed, or the party seeking maintenance concedes at trial his or her lack of knowledge regarding the actual amounts of the claimed expenses, or the party testifies inconsistently as to the amount of the expenses claimed in his or her income and expense statement, then the weight to be accorded to the statement is negligible and does not constitute substantial evidence of reasonable needs.

*Id.* at 855.

To support this proposition, *Childers* cites *Brooks v. Brooks*, 957 S.W.2d 783, 788 (Mo.App. W.D. 1997), which in turn relies on *M.A.Z. v. F.J.Z.*, 943 S.W.2d 781, 790 (Mo.App. E.D. 1997), where this principle originates. *M.A.Z.* unambiguously dictates the proper bounds of its holding:

7

We recognize that parties' statements of income and expenses are routinely admitted and relied upon without further testimony or documentary support for each individual item. Nothing in this case should be read as suggesting that such statements, properly offered and admitted in evidence, cannot serve as substantial evidence to support a finding of reasonable need in the absence of a genuine dispute. In this case, however, the amounts and types of expenses claimed are decidedly atypical and were vigorously disputed. The claims were expressly predicated on a standard, *i.e.*, the alleged standard of living during the marriage, that is not justified by the facts of this case. Wife conceded her lack of knowledge of the actual amounts expended and the amounts claimed are in many ways inconsistent with her own testimony concerning her preferred lifestyle. To the extent Wife's claimed expenses can be compared with available records, they appear to be consistently and substantially inflated. Under such circumstances, we find that the weight to be accorded Wife's statement of income and expense is negligible and that it does not constitute substantial evidence of her reasonable needs as contemplated by the statute.

*Id.* at 790. This was, by its explicit language, a case-specific holding not properly applied to other cases not sharing *M.A.Z.*'s "unique" facts.

We find the facts of *M.A.Z.* distinguishable from the facts here. Exhibit CC requested $4,993 for "Rent or mortgage payments[.]" (Emphasis omitted). Dianna's testimony, which the trial court presumably believed, was that her expense request was premised on living in a "large house." This was substantial evidence to support the trial court's award to Dianna of $2,500 per month for rent or mortgage payments.

Bruce further argues that there was insufficient evidence to support the trial court's award of: $750 per month for loan and credit card payments; $100 per month for gas and utilities; $425 for landline and cellular telephone service; $100 per month for water and sewer payments; and $400 per month for cable television, newspapers, and magazines.

As *Childers* and other cases indicate, we must determine whether an overage, in the context of the *entire* maintenance award, is unreasonable. When we add the overages,[3] which

---

[3] In some instances, Bruce does not challenge the entire individual expense allocation as unsupported, but rather that the trial court simply awarded more than the evidence supported. This figure reflects the amount *above* those expenses for which there was sufficient evidence.

8

Bruce suggests are unsupported by the evidence, we arrive at a total figure that Dianna was awarded $889.39 per month above her actual reasonable expenses. The trial court awarded Dianna $6,560 in monthly maintenance, meaning that Dianna's award was approximately 14 percent above her actual reasonable expenses, assuming, without deciding, that the overages Bruce identifies are unsupported.

Our courts have affirmed maintenance awards above a party's reasonable needs where the overage is nominal, *Childers*, 26 S.W.3d at 857 (affirming a maintenance award of $400 per month, $200 above wife's reasonable needs), or where the overage does not, in the context of the case, excessively exceed a party's reasonable needs. *See e.g.*, *Cohen v. Cohen*, 73 S.W.3d 39, 52 (Mo.App. W.D. 2002) (affirming a maintenance award including day-to-day expenses that exceeded wife's reasonable needs by approximately 30 percent), and *Bryant*, 351 S.W.3d at 690 (affirming maintenance award of $1,200, $325 or 26 percent above wife's reasonable needs); *compare with Ross*, 231 S.W.3d at 886 (reversing maintenance award of $1,250 per month because it exceeded wife's reasonable needs of $355 per month by 338 percent), and *Heins v. Heins*, 783 S.W.2d 481, 483 (Mo.App. W.D. 1990) (reversing a combined maintenance and child support award of $800 per month when it exceeded wife's reasonable needs of $503 per month by approximately 37 percent).

Given this precedent, and the record before us, we cannot find that a 14-percent overage would amount to an abuse of discretion. The trial court heard 3 days of testimony comprised of 8 witnesses and approximately 200 exhibits, resulting in a transcript of almost 500 pages. We are unable to conclude on this record that the trial court's judgment on maintenance is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock our sense

of justice to indicate a lack of careful consideration. The trial court's award of maintenance to Dianna is supported by substantial evidence. Bruce's Point I is denied.

***Bruce's Point II: Award of Attorney Fees Not an Abuse of Discretion***

In Bruce's second point, he argues the trial court abused its discretion in awarding Dianna attorney fees and costs in a total amount of $91,900.93, and that the trial court failed to give appropriate credit for $75,000 Bruce had already paid toward Dianna's attorney fees.

We presume the trial court's award of attorney fees is correct, and will reverse the award only upon a showing that the trial court abused its discretion. ***Potts v. Potts***, 303 S.W.3d 177, 196 (Mo.App. W.D. 2010).

Bruce acknowledges that the trial court's finding as to the amount of attorney fees incurred by Dianna was supported by substantial evidence, as found in Exhibit DD ("Summary of Attorney Fees and Litigation Costs Paid by [Dianna] Personally Or Incurred to Date"), which was admitted without objection. There was no cross-examination of any witness concerning the exhibit. However, Bruce argues that Exhibit DD shows that Bruce had paid $75,000 toward Dianna's attorney fees and that the trial court failed to credit that amount against Dianna's total. We disagree.

Exhibit DD purports to show, *inter alia*, $56,330.64 in attorney fees already paid by Dianna to her attorneys, attorney fees incurred by Dianna but not yet paid as of September 20, 2013, monies paid to Dianna by Bruce for services from November 2012 to April 2013, and monies paid by Bruce to Dianna's attorneys. While not a model of clarity, the exhibit does not, on its own, show that the trial court failed to credit the amounts paid against Dianna's total.

Further, Dianna's testimony at trial, which the trial court apparently believed, indicated that Exhibit DD accurately showed the amounts paid and due regarding Dianna's attorney fees. In Dianna's direct examination, she admitted that $75,000 had already been paid by Bruce.

It is Bruce's burden on appeal to show trial court error, and his reference to Exhibit DD does not meet this burden. *See Bryant*, 351 S.W.3d at 691. To the extent that Bruce believed the exhibit did not accurately reflect the payments he had made to date, his opportunity to challenge the credibility of the accounting of attorney fees was by disputing the evidence at trial. The trial court did not abuse its discretion in awarding Dianna attorney fees. Bruce's Point II is denied.

### *Dianna's Points One and Four: Erroneous Application of the Law in Classifying the Covenant Account as Non-Marital Property and Abuse of Discretion in Terminating Maintenance at Thirteen Years*

For ease of analysis, we take Dianna's points out of order and combine Dianna's Points One and Four. Dianna argues in her Point One that the trial court erroneously applied the law in classifying approximately one million dollars in the Covenant account as Bruce's separate non-marital property.[4] Dianna claims that this was property acquired after marriage and that Bruce failed to rebut the presumption this was marital property.

In a dissolution proceeding, the trial court first sets apart to each spouse non-marital property, then divides the marital property and marital debts as the court deems just after considering the statutory factors from section 452.330.[5] *Glenn v. Glenn*, 345 S.W.3d 320, 326

---

[4] Bruce argues that Dianna failed to preserve this claim because her point relied on failed to contend that the trial court's erroneous classification resulted in an unfair division of property, relying upon *Stroh v. Stroh*, 454 S.W.3d 351, 363-64 (Mo.App. S.D. 2014) (implicitly applying Rule 84.04). Dianna's point does not technically meet the requirements of Rule 84.04, as interpreted in *Stroh*. However, Bruce was not prejudiced by this deficiency as he fully briefed the matter, and made arguments regarding the substance of the point at oral argument. Because our ability to evaluate Dianna's point is not inhibited, and Bruce was not deprived of notice of the issue presented, we review *ex gratia*. *Contrast with In re Marriage of Smith*, 283 S.W.3d 271, 275 (Mo.App. E.D. 2009) ("The failure of the points to comply with Rule 84.04(d) deprives wife of notice of the issues presented and interferes with our ability to evaluate husband's claims.").

[5] All references to statutes are to RSMo 2000, unless otherwise indicated.

(Mo.App. S.D. 2011). Property is non-marital where a spouse owned it before marriage and retained separate title after marriage. *Stroh v. Stroh*, 454 S.W.3d 351, 363 (Mo.App. S.D. 2014). "Placing separate property of a spouse into the joint names of both spouses creates a rebuttable presumption that the property has been transmuted into marital property." *Jinks v. Jinks*, 120 S.W.3d 301, 305 (Mo.App. W.D. 2003). Property acquired by one spouse after a marriage is entered is presumed to be marital property regardless of whether title is held individually or jointly by the spouses. *Stroh*, 454 S.W.3d at 363 (citing section 452.330.3). Any increase in the value of separate property is marital property if marital assets or marital labor contributed to acquiring that increase. *Id.* A trial court's error in classifying property is not necessarily prejudicial unless it affects the merits of the action—where the decree is fair despite a misclassification, reversal is not an appropriate remedy. *Id.*

The evidence at trial shows that the parties were married on August 20, 2000. In 2005, the HFE board of directors developed Covenant, which was to be funded by HFE dividends for the benefit of Covenant stockholders, including Bruce. There was, therefore, a presumption that the funds in the Covenant account were marital property pursuant to section 452.330. *Stroh*, 454 S.W.3d at 363. Bruce does not direct us to evidence in the record showing that this presumption was rebutted. Instead, Bruce attempts to show that whatever allocation was made with respect to the Covenant account, Dianna was not prejudiced because of the overwhelming amount of debt allocated to Bruce. However, we are unable to discern how the treatment of Covenant would have impacted the trial court's allocations.

Based upon the record before us, we conclude the trial court erroneously applied the law in classifying Bruce's Covenant account as non-marital property. The trial court did not explain why it concluded this account was non-marital property. The Judgment allocates the Covenant

12

account of approximately one million dollars to Bruce, which is a substantial and material amount of the property. Given the value of the property and Bruce's failure to convince us this is not material, we find Dianna's Point One is well taken. *See Appling v. Appling*, 156 S.W.3d 454, 458 (Mo.App. E.D. 2005) (an error in classifying property is prejudicial where it "materially affect[s] the merits of the action.").

We next turn to Dianna's Point Four because the trial court's resolution of the issues created by the Covenant account may affect Dianna's maintenance award. In Point Four, Dianna argues that the trial court erroneously applied the law terminating her monthly maintenance in thirteen years because there was no substantial evidence that the financial conditions of either party would be different after thirteen years.[6] We do not reach the merits of Dianna's Point Four because the trial court's resolution of the Covenant account may affect any maintenance awarded to Dianna. An award of maintenance may be affected by apportionment of marital property. § 452.330.1.[7]

---

[6] Dianna's point combines a substantial-evidence challenge and a misapplication-of-the-law challenge in the same point relied on. "These are distinct claims." *Ivie v. Smith*, 439 S.W.3d 189, 199 n.11 (Mo. banc 2014). "They must appear in separate points relied on . . . to be preserved for appellate review." *Id.* We grant review *ex gratia*, but caution appellate counsel to follow the mandatory dictates of Rule 84.04.

[7] We observe that although the trial court has broad discretion in determining duration of maintenance, there is a judicial preference for awards of maintenance that are of unlimited duration. Maintenance may only be limited in duration

> where there is substantial evidence that the financial condition of the parties is subject to an impending change. The trial court should not prospectively terminate maintenance if there is no evidence presented or no reasonable expectation exists that the circumstances of the parties will be substantially different in the future.

*In re Marriage of McMillian*, 399 S.W.3d 838, 841 (Mo.App. E.D. 2013) (internal quotation and citation omitted).

***Dianna's Points Two and Three: No Error or Abuse of Discretion***
***in Valuing Marital Business Debts at Zero Dollars***
***and No Erroneous Application of the Law in Valuing***
***Butterfly Palace and Predator World Zoo***

In her second point, Dianna argues that the trial court erred in assigning a value of "$0" to notes owed to Bruce and Dianna by family businesses—the right to payment from which were awarded to Bruce—as the trial court found that the businesses had a negative value of $3,396,000 based in part on debts owed to Bruce and Dianna.

Dianna alleges that there is no applicable standard of review because the findings were inconsistent and ambiguous, citing ***Maninger***, 106 S.W.3d at 12. Because, as we discuss below, the findings are not inconsistent and ambiguous, our standard of review is for abuse of discretion. ***Short v. Short***, 356 S.W.3d 235, 246 (Mo.App. E.D. 2011).

The Judgment awarded all four marital properties to Bruce, and assigned the following values to the businesses:

- Adventure Creations, Inc.: negative $798,000
- Butterfly Palace: negative $969,000
- RBD Marketing, LLC: negative $2,297,000
- Tia's World, LLC (owner of Predator World Zoo): $250,442

However, Dianna suggests that this is contradictory to another finding "that the debt each company owes to Bruce and Dianna was 'zero.'" (Underscore omitted). The portion of the Judgment Dianna relies on awarded "notes owed" to Bruce from family businesses—following each note, the court assigned a value of "$0". Dianna's argument suggests that these two findings are contradictory—we disagree.

In arriving at these values, the trial court relied on the testimony of expert witness Ellison wherein Ellison testified he arrived at these values by comparing the values and liabilities of each business, including amounts owed by the businesses to Bruce and Dianna. Specifically,

14

Ellison testified that these businesses owed a combined total of $3,960,000 to Bruce and Dianna, and that if the company were purchased by a third party, it would need to pay the obligations of all creditors, including Bruce and Dianna. Additionally, Bruce testified that there was "no way" the notes owed by the businesses to Bruce and Dianna would ever be paid because none of the businesses were healthy enough to produce the capital, and there was no reasonable likelihood any of the businesses would be successful in the future.

As we have previously held, "[t]he credibility of the witnesses and the weight to be given their testimony is for the trial court, which is free to believe none, part or all of the testimony of any witness." *Williams Const., Inc. v. Wehr Const., L.L.C.*, 403 S.W.3d 660, 662 (Mo.App. S.D. 2012). The trial court was free to credit, and did credit, the testimony of Ellison and Bruce regarding the value of these businesses to Bruce and Dianna, and the value of the notes owed by the businesses to Bruce and Dianna. Therefore, the trial court did not abuse its discretion in finding that the businesses had a negative value while also assigning no value to these notes when awarding them to Bruce.

In her third point, Dianna argues that the trial court erred in valuing marital property—Butterfly Palace and Predator World Zoo—based on a "quick sale value" rather than fair market value.

> As with any court-tried case, the judgment in a dissolution case will be affirmed if it is supported by the evidence; it is not against the weight of the evidence; and it does not erroneously declare or apply the law.

*Stone v. Stone*, 450 S.W.3d 817, 820 (Mo.App. W.D. 2014).

Dianna challenges that the trial court's method of valuation was an erroneous application of law. The Western District of this Court previously rejected this argument. In *Sparks v. Sparks*, 417 S.W.3d 269, 285 (Mo.App. W.D. 2013), the court rejected wife's assertion that the

15

valuation of a piece of marital property was a question of law, holding instead that while a property valuation must be supported by the evidence at trial,[8] "[p]roperty valuation is a *determination of fact* by the trial court, to which we give great deference, and no one formula or method of determining value is binding or conclusive." ***Id.*** (internal quotation and citation omitted) (emphasis in original). The trial court did not erroneously apply the law in valuing Butterfly Palace and Predator World Zoo.

The Judgment of the trial court is affirmed in part and reversed in part. It is remanded for further proceedings with respect to the classification of the Covenant account as marital versus non-marital property, any division of property and/or debts depending on the distribution of the Covenant account, the amount and timing of maintenance to Dianna, and any other proceedings consistent with this opinion. All other parts of the Judgment are affirmed.

WILLIAM W. FRANCIS, JR., J. – OPINION AUTHOR

JEFFREY W. BATES, J. - Concurs

DANIEL E. SCOTT, J. – Concurs in separate concurring opinion

---

[8] We note that this Court may not step into the role of advocate and craft arguments on behalf of Dianna, which she has not made herself in this appeal. ***Selberg v. Selberg***, 201 S.W.3d 513, 515 (Mo.App. W.D. 2006).



## Missouri Court of Appeals

### Southern District

#### Division One

RAYMOND BRUCE HERSCHEND,　　　　)
　　　　　　　　　　　　　　　　　　　　　　　)
　　　　Appellant/Cross-Respondent,　　　)　　Nos. SD33116 and SD33134
　　　　　　　　　　　　　　　　　　　　　　　)　　　　　Consolidated
vs.　　　　　　　　　　　　　　　　　　　　)　　Filed:　September 30, 2015
　　　　　　　　　　　　　　　　　　　　　　　)
DIANNA VEE HERSCHEND,　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　)
　　　　Respondent/Cross-Appellant.　　　)

### CONCURRING OPINION

I concur with further comments in two respects. First, one answer to Dianna's Points II and III is that when a company has a negative value, its promise to pay might be deemed worthless, but not worth less than zero. The distinction is between valuing the company and valuing its ability to pay.

Second, ***Childers v. Childers***, 26 S.W.3d 851, 855 (Mo.App. 2000), goes too far in saying a properly admitted statement of income and expenses "does not constitute substantial evidence of reasonable needs" if expenses are disputed. ***Childers*** misstates the following observation from ***Brooks v. Brooks***, 957 S.W.2d 783, 788 (Mo.App. 1997):

> [W]here the amounts and types of expenses claimed by a party seeking maintenance are disputed; the party at trial concedes his or her lack of knowledge regarding the actual amounts of the claimed expenses; and, the party testifies inconsistently as to the amounts of expenses claimed in his or her income and expense statement, the weight to be accorded to the statement is negligible and does not constitute substantial evidence of reasonable needs.

That is, when (1) expenses are disputed *and* (2) the party concedes lack of knowledge *and* (3) testifies inconsistently with the statement, the statement does not constitute substantial evidence per **Brooks**.

While purporting to follow **Brooks**, **Childers** substitutes "ors" for "ands" so any single factor is sufficient:

> [I]f such expenses are disputed, *or* the party seeking maintenance concedes at trial his or her lack of knowledge regarding the actual amounts of the claimed expenses, *or* the party testifies inconsistently as to the amounts of expenses claimed in his or her income and expense statement, then the weight to be accorded to the statement is negligible and does not constitute substantial evidence of reasonable needs.

**Childers**, 26 S.W.3d at 855 (my emphasis). Assuming *arguendo* that the latter two factors might rob a statement of "substantial evidence" status, that would not be true merely because values are disputed, especially in cases like this where the statement comes into evidence without objection.

DANIEL E. SCOTT, J. – SEPARATE OPINION AUTHOR

2