## In re the MARRIAGE OF Brian C. MURPHY and Veronica L. Murphy.

Brian C. Murphy, Petitioner–Appellant,

v.

Veronica L. Murphy, Respondent–Respondent.

No. 24188.

Missouri Court of Appeals, Southern District, Division One.

March 25, 2002.

Ronald D. White, Williams, Robinson, White & Rigler, P.C., Rolla, for appellant.

Tony Skouby, St. James, for respondent.

KENNETH W. SHRUM, Presiding Judge.

This is a dissolution of marriage case in which Husband appeals from that part of the decree that awarded Wife non-modifiable, rehabilitative maintenance for forty-eight months and permanent, periodic monthly maintenance. He argues that there is not sufficient substantial evidence from which the trial court could decide if Wife needed maintenance. We disagree. We affirm.

Husband and Wife were married June 20, 1986, separated in the latter part of 1998, and their marriage was dissolved

February 7, 2001. There were no children born of their marriage.

The record reflects Husband was retired from the National Guard and worked as a civilian employee at the U.S. Army Maneuver Support Center at Fort Leonard Wood, Missouri, at the time of trial. His gross monthly income was $5,547.86, and his net was $3,443.71 per month. Husband listed his expenses as $3,438.22 per month.

Wife, born October 25, 1948, was a high-school graduate and had attended a Laramie, Wyoming, community college for one and one-half years. The Social Security Administration ("SSA") had adjudged her disabled within the meaning of its rules in 1992, and her disability status remained unchanged after that. Therefore, she was not employed at the time of trial, and her only income was a $508 per month disability benefit.[1]

Wife's employment history included work as a micro-filmer (which she was doing when she and Husband married), retail, clerical, and cashier jobs, and work at a motel. Her employment during marriage had been "off and on" until she sustained a disabling back-injury (a herniated disc) at her motel job in 1991. Although Wife was treated surgically for her disc problem, she continued to experience pain in her back and lower extremities. This injury and other conditions (arthritis in knees, degenerative disc disease, depression, stomach problems, nervousness) ultimately led to her SSA disability award. Wife testified she was seeing three doctors for her physical ailments and a psychiatrist for her mental health problem.[2]

At trial, Wife testified she was not sure when she might go back to work, but was trying to get more training. To that end, she had borrowed $3,200 to go to school, and had enrolled in a medical office technology class in January 2000. She attended class for one quarter, but then quit because of "pain and stress." Even so, Wife stated she intended to go to school and make a better life for herself; that she planned to attend school at Laramie County Community College in Cheyenne, Wyoming (where she has family) for two years and then transfer to the University of Wyoming to get a four-year degree.

Wife's income and expense statement were never offered or received in evidence. Although she testified she needed maintenance, she told the court she had no "idea of how much money [she] need[ed.]" She did, however, testify about some of her needs. For instance, Wife explained that during the separation period, she lived in the marital home, and Husband had made the house payment. She stated that she had tried "[v]ery hard" to meet all her other needs, i.e., everything but housing, on the $508 per month SSA benefit. However, she had found it "[v]ery difficult" to pay her bills on that income. She explained that her daughter Debbie (from a previous marriage) occasionally helped her with electric bills. Wife testified she did not want the house awarded to her because she could not afford it. She also testified she planned to move to Cheyenne, Wyoming, and rent an apartment at an estimated cost of $550 per month. When asked how she would pay $550 per month rent in Wyoming when she could not make a $380 house payment in Missouri, Wife answered, "With maintenance I could do

---

1. The $508 check was Wife's net amount, i.e., after deduction of $54 for her Part B Medicare payment.

2. Wife presented no evidence concerning the frequency of her doctor visits, the cost (if any) for those visits, or whether she took any medicine.

that." Wife presented no testimony about the frequency of her doctor visits or the amount of her uninsured medical costs. She did, however, testify that her Medicare did not cover all her medical expenses, that she needed supplemental medical insurance coverage, and such coverage would cost over $200 per month.

The parties' principal marital property items were the marital home with an estimated equity of $30,000 and Husband's thrift savings plan (present value, $154,000). The court divided those items equally between the parties. It also divided the remaining marital property essentially equally and assigned responsibility for debts (including credit card debts of $26,513.98 to Husband and $26,645.74 to Wife). The court also ordered Husband to pay Wife $400 per month as rehabilitative maintenance (non-modifiable) and permanent, periodic maintenance of $50 per month (modifiable). On appeal, Husband argues the "judgment was not supported by substantial evidence, was against the weight of the evidence, and erroneously declared and applied the law in that there was no substantial evidence before the court from which the court could determine that [Wife] was in need of maintenance or the amount of such maintenance."

▆▆▆ Appellate review of a dissolution case is governed by the principles enunciated in *Murphy v. Carron*, 536 S.W.2d 30 (Mo.banc 1976). *See In re Marriage of Trimble*, 978 S.W.2d 55, 57 (Mo.App.1998). Thus, we must affirm the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Murphy*, 536 S.W.2d at 32[1]. A trial court has broad discretion in setting the amount and duration of a maintenance

award in a dissolution case. *Van Skike v. Van Skike*, 858 S.W.2d 779, 780[4] (Mo. App.1993). Accordingly, maintenance awards are reviewed only for abuse of discretion. *Vehlewald v. Vehlewald*, 853 S.W.2d 944, 953[32] (Mo.App.1993).

Section 452.335.1 sets forth the two-part threshold test for an award of maintenance.[3] The court must first consider whether the party requesting maintenance has sufficient property, including marital property divided during the dissolution proceedings, to provide for his or her reasonable needs. *Trimble*, 978 S.W.2d at 58[4]. If the party requesting maintenance has insufficient property to meet his or her needs, the court then examines whether the party's reasonable needs can be met through appropriate employment. *Id.*

▆▆▆ It is well settled that under § 452.335.1, a party seeking maintenance must prove need before such an award can be made. *Id.* at 58[5]. "The basic test is the reasonable needs of the [recipient] spouse." *Walker v. Walker*, 631 S.W.2d 68, 70[2] (Mo.App.1982). Without some "evidence of reasonable need, a maintenance award is not proved." *Shroder v. Shroder*, 552 S.W.2d 342, 343[2] (Mo.App. 1977). A mere request for maintenance of a specified amount is insufficient to support a maintenance award. *Trimble*, 978 S.W.2d at 58[7]. Even under the broad discretion standard, a maintenance award must be "made within a reasonable tolerance of proof." *Chapman v. Chapman*, 871 S.W.2d 123, 126[15] (Mo.App.1994).

▆▆▆ Here, the trial court did not make an express finding as to the amount of Wife's reasonable needs nor did it make findings of record about what income and expense evidence it used in setting Wife's maintenance award. However, the ab-

---

**3.** All statutory references are to RSMo (2000)  unless otherwise stated.

sence of such findings is not a sufficient ground for reversing the maintenance award. *See Stangeland v. Stangeland,* 33 S.W.3d 696, 701 (Mo.App.2000); *Anderson v. Anderson,* 584 S.W.2d 613, 616 (Mo.App. 1979). When, as here, neither party requested findings of fact and conclusions of law pursuant to Rule 73.01(c), fact issues are deemed to have been resolved by the trial court in accordance with its award of maintenance. *Stangeland,* 33 S.W.3d at 701.

■ Measured by this standard, the record here reveals the following. Other than the approximate $15,000 Wife will receive upon sale of the marital home (assuming it sells for as much as anticipated), the marital and nonmarital property awarded Wife contains no income-producing assets. In so stating, we do not ignore the award to Wife of one-half of Husband's retirement account. However, retirement accounts such as this one, i.e., one that is not readily available to a party, should not be considered as "income-producing property" for purposes of determining if a spouse is entitled to maintenance. *Witt v. Witt,* 930 S.W.2d 500, 503[5] (Mo.App. 1996).

As to Wife's needs and income, there was ample evidence to support an implicit finding that Wife's needs exceeded her income by more than the maintenance award. This is found in Wife's testimony that (1) her only income at the time of trial was a $508 monthly SSA benefit; (2) she had found it "very difficult" to pay her bills on $508 per month, not considering a housing expense; (3) her estimated apartment rent was $550 per month; (4) her needs included medical expenses that were not fully covered by Medicare; and (5) supplementary medical insurance coverage would cost her over $200 per month. This is evidence supportive of a finding that Wife's reasonable needs were at least $700 per month more than her income. Under the circumstances, an award of $450 per month was not abuse of discretion, especially when only $50 of it was designated permanent maintenance.

■ As to the rehabilitative maintenance part of this award, it implies a finding that additional education is necessary for Wife to achieve the proper level of supportive ability. *Pederson v. Pederson,* 599 S.W.2d 51, 53[3] (Mo.App.1980). "The appellate court will defer to [such] finding even though the evidence does not conclusively show the spouse's inability to support herself." *Id.* Although Wife presented no direct evidence about the cost of her rehabilitative efforts, she testified she borrowed $3,200 to attend one semester of community college. She also testified that her intent was to attend six years of college, two at the community college and four at a four-year college. On this record, the trial court's rehabilitative and permanent maintenance awards were "made within a reasonable tolerance of proof," both as to amount and duration. We reject Husband's arguments to the contrary.[4] Point denied.

4. We have not ignored cases Husband cites to urge reversal. In *Chapman,* 871 S.W.2d 123, a $450 monthly maintenance award was reversed because the only evidence of Wife's expenses was that utilities at the marital home averaged $240 per month and the annual tax bill on the house was $800. Since Wife's monthly gross income was $953.35, these expenses standing alone did not support the award. *Id.* at 126. Those are not the facts here. In *Buerge v. Buerge,* 935 S.W.2d 390 (Mo.App.1996) and *In re Trimble,* 978 S.W.2d 55, the parties seeking maintenance presented evidence about their earnings, their spouses' earnings, and made a specific request for a definite amount of maintenance. However, they adduced *no evidence* about their needs; consequently, maintenance awards were reversed on appeal. Again, those are not the facts of this case.

The judgment of the trial court is affirmed.

MONTGOMERY, J. and BARNEY, C.J., concur.