WILLIAM W. FRANCIS, JR., J.
Todd R. Schubert ("Husband") appeals the trial court's "Judgment and Decree of Dissolution" dissolving his marriage to Kelley M. Schubert ("Wife"), and issuing a modifiable award of maintenance to Wife in the amount of $2,000 per month. In two points relied on, Husband (1) argues the trial court erred in issuing the award of maintenance because the trial court's findings that Wife lacked sufficient property and employment to meet her reasonable needs were against the weight of the evidence; and (2) if our disposition is favorable as to Point I, requests remand for recalculation of Husband's child support *791 obligations. Finding no merit to Husband's points, we affirm.
Factual and Procedural History
We recite the facts of this matter in accord with the principle that we view the evidence in the light most favorable to the judgment. We credit all evidence and reasonable inferences in favor of the judgment, and disregard unfavorable evidence and inferences. Landewee v. Landewee , 515 S.W.3d 691, 694 (Mo. banc 2017).
Husband and Wife were married on June 7, 1997. Seven children were born of the marriage: twins R.S. and T.S., born in 2000; K.S., born in 2002; B.S., born in 2004; D.S., born in 2006; M.S., born in 2008; and T.S., born in 2011 (collectively "the Children").
Wife worked as a nurse from 1997 to 2009. She began homeschooling the Children in 2004, and allowed her nursing license to lapse in 2013. Wife oversaw the vast majority of the Children's care, including their numerous individual extracurricular activities, such as church groups, music lessons, and sports. Wife worked part-time as a daycare worker earning $400 per month.
Husband primarily worked as an insurance agent, and also worked at a livestock auction barn.
In 2005, the parties began a chicken operation in partnership with George's Inc. Wife oversaw the management of this operation, which consisted of several different chicken houses, including one on the property by the family home. Husband would enlist the Children to work at the chicken houses, often pulling the Children away from homeschooling only a few hours after school had begun. The credited evidence was that Husband cared little for the Children's needs, including their schooling or activities, and treated them like "unpaid labor."
We note that Husband displayed aggressive, violent, negligent, and reckless behaviors toward the Children. There was credited evidence of physical injuries some of the Children had sustained by Husband, and all of the Children were in counseling because of Husband's conduct. Even when attending counseling with the Children, Husband's conduct was extreme: Husband's behavior was something the counselor "had never [before] witnessed at her office."
The parties initially separated in September 2014, after Wife learned of Husband's extra-marital affair with a younger woman. Husband and Wife reconciled after Husband reported the affair was over, and Husband and Wife began marriage counseling. During counseling, Wife learned Husband had fathered a child with his paramour during the affair and as a result, the parties again separated on May 17, 2015. Wife filed a "Petition for Dissolution of Marriage" on June 22, 2015. Thereafter, Husband filed an answer and counter petition.
The trial court entered a temporary order on August 28, 2015, whereby Husband was to pay Wife half the costs of the Children's extracurricular activities, as well as half the Children's medical, dental, and miscellaneous expenses.
The parties continued the chicken operation, but Husband would consistently pay himself for more hours than he worked, and refused to pay the Children for the substantial amount of work they performed at his insistence.
On February 18, 2016, Wife removed herself and the Children from the family home, leaving the chicken operation to Husband.
*792 Thereafter, Husband consistently violated the trial court's temporary order of August 28, 2015, by failing to pay Wife half of the Children's expenses. Wife pleaded with Husband, but to no avail. Recognizing Wife's dire financial situation, friends, neighbors, and others began giving wife "gifts" in the form of Wal-Mart cards and cash.
A two-day trial commenced on August 2, 2016. Husband and Wife both testified, along with several other witnesses.[1]
The trial court entered its "Judgment and Decree of Dissolution" on November 8, 2016. Husband had requested the chicken operation be awarded to him and accordingly, the trial court awarded Husband the right to purchase Wife's interest in the chicken operation for $330,000,[2] within ninety days. Husband was also to refinance the debt of approximately $1,603,092,[3] and pay any real estate taxes due. Husband was to receive all the vehicles, equipment, machinery, and other personal property associated with the chicken operation, which included a 2012 Dodge truck valued at $26,000, but with a debt of $3,500. If Husband did not exercise his right to buy out Wife, then the chicken operation and all its assets would be sold, and the parties would divide equally the proceeds from the sale after payment of all mortgages, taxes, and expenses.
The trial court awarded Wife, as her marital property: a 1992 Ford Ranger, with no assigned value; miscellaneous personal property, with an approximate value of $2,800; a handgun with an approximate value of $600; four horses, with no assigned value; one-half of the Hen Account #4007803, or approximately $323; one-half of the money market account #4007761, or approximately $1,500; one-half of the Health Savings Account, or approximately $2,800; one-half of the Farm Bureau Life Insurance policy on Husband and Wife, or approximately $2,288; one-half of the Farm Bureau Life Insurance policy on Husband, or approximately $2,703; one-half of the Farm Bureau 401k account, or approximately $37,600; one-half of the Thrivent annuity, or approximately $18,381; one-half of the Farm Bureau annuity, or approximately $57; one-half of the Farm Bureau IRA, or approximately $1,759; and one-half of the 50 percent interest in High Road Land and Cattle Company. Wife received approximately $70,811, in marital property.[4]
*793 The trial court awarded Husband, as his marital property, the 2012 Chevrolet Suburban, with an approximate value of $32,000 (and an approximate debt of $35,000); firearms, with an approximate value of $3,050; miscellaneous personal property, with an approximate value of $4,400; one-half of the Hen Account #4007803, or approximately $323; one-half of the money market account #4007761, or approximately $1,500; one-half of the Health Savings Account, or approximately $2,800; one-half of the Farm Bureau Life Insurance policy on Husband and Wife, or approximately $2,288; one-half of the Farm Bureau Life Insurance policy on Husband, or approximately $2,703; one-half of the Farm Bureau 401k account, or approximately $37,600; one-half of the Thrivent annuity, or approximately $18,381; one-half of the Farm Bureau annuity, or approximately $57; one-half of the Farm Bureau IRA, or approximately $1,759; and one-half of the 50 percent interest in High Road Land and Cattle Company. Husband received approximately $106,861, in marital property.
Husband was ordered to pay $27,180 in marital debt, in addition to the approximately $35,000 owed on the 2012 Chevrolet Suburban, or $62,180. Wife was to pay marital debt in the amount of $8,630. Husband was also to reimburse Wife the sum of $2,814.75, for separate expenses she incurred from the chicken operation; and pay Wife an equalization payment in the amount of $2,661.28, representing the value of the excessive draws taken by Husband from the chicken operation.
Wife testified that she intended to continue homeschooling the Children, and the guardian ad litem testified that this was in the Children's best interest. The trial court issued an award of modifiable maintenance in the amount of $2,000 per month, without time limitation. The trial court's findings indicated that the trial court:
considered the marital property apportioned to the parties, the financial resources of the parties, the educational status of the parties, the standard of living during the marriage, the duration of the marriage, the age, physical and emotional condition of the parties, the ability of each spouse to meet his or her needs, and the parties' conduct during the marriage, found that Wife lacked sufficient property to provide for her reasonable needs and was unable to support herself through employment.
The trial court awarded sole legal and sole physical care and custody of the Children to Wife, with limited supervised visitation for Husband.
In calculating child support, the trial court did not accept Wife's Form 14 as correct, and Husband did not file a Form 14. Instead, the trial court "calculate[d] its own" Form 14 to determine the amount of child support to be paid by Husband. The trial court found Wife's monthly income to be $2,400 per month: $400 from her part-time teaching position, and $2,000 in monthly maintenance. The trial court found Husband's gross monthly income to be $9,632 per month: $5,466 per month from his insurance job, an additional $2,000 per month from the auction house, and $2,000 per month from the chicken operation. Husband received credit for the $2,000 monthly maintenance payment, reducing his monthly income to $7,632. Using the calculations from the trial court's "Form 14 CHILD SUPPORT AMOUNT
*794 CALCULATION WORKSHEET," the trial court ordered Husband to pay $2,321 per month as child support for his seven children. In addition, Husband was to maintain health insurance on the Children, but the parties were ordered to pay one-half of any uninsured medical, optical, optometric, dental and orthodontic bills for the Children.
Husband was also ordered to reimburse Wife for one-half of the Children's medical and dental expenses, and one-half of extracurricular expenses in the amount of $8,655.15 that he was previously ordered, and that he previously refused, to pay. Husband was also ordered to pay $7,000 toward Wife's attorney fees.[5]
On December 8, 2016, Husband filed a "Motion to Vacate, Amend or Modify the Judgment, or in the Alternative, Motion for New Trial." Wife filed suggestions in opposition to the motion. The motion asserted, in relevant part, that the trial court erred in ordering Husband to pay child support in the amount of $2,321, and monthly maintenance in the amount of $2,000, as the trial court imputed income to Husband that he did not receive. The trial court denied Husband's motion on March 9, 2017. This appeal followed.
In two points on appeal, Husband asserts (1) the trial court erred in issuing an award of maintenance in the ongoing amount of $2,000 per month, in that the trial court's finding that Wife lacked sufficient property and employment to provide for her reasonable needs was against the weight of the evidence; and (2) conditioned on favorable disposition as to Point I, that remand is required to recalculate child support.
Standard of Review
This Court must sustain the trial court's judgment in a dissolution case unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. This Court accepts as true the evidence and reasonable inferences therefrom in the light most favorable to the trial court's judgment, and disregards all evidence and inferences to the contrary.
Landewee , 515 S.W.3d at 694 (internal quotations and citations omitted).
We will not interfere with an award of maintenance unless an appellant shows that it reflects such "arbitrary and unreasonable" decision-making by the trial court, and is so lacking in "careful consideration," that the award "shock[s] our sense of justice[.]"[6] This standard is met where an appellant shows that the award of maintenance is "patently unwarranted and wholly beyond the means of the spouse who pays."[7] We will "affirm the trial court's decision on any basis supported by the [record;]"[8] therefore, to succeed on appeal, an appellant must show that no such basis exists.
The credited evidence in this case, which we consider, was extensive. There *795 were multiple hearings over the course of many months, and the transcript alone is over 1,100 pages. The evidence the trial court could have credited, but did not, was also extensive. We do not consider that evidence. In an evidentiary challenge-whether substantial evidence or against the weight of the evidence-we do not consider evidence the trial court did not credit (either by explicit finding, or implication). See Houston v. Crider , 317 S.W.3d 178, 187 (Mo. App. S.D. 2010) ; White v. Director of Revenue , 321 S.W.3d 298, 304-05 (Mo. banc 2010).
An against-the-weight-of-the-evidence challenge presupposes the existence of substantial evidence to support the outcome-that is, the argument presumes there was some evidence with "probative force on each fact necessary to sustain" it. Holm v. Wells Fargo Home Mortgage, Inc. , 514 S.W.3d 590, 596 (Mo. banc 2017). In an against-the-weight-of-the-evidence challenge, we may consider a narrow category of evidence contrary to the judgment: evidence, where the effect "is legal, and there is no finding of fact to which [we] defer." White , 321 S.W.3d at 308. In other words, evidence of such a nature that the only "question before the appellate court is whether the trial court drew the proper legal conclusions" therefrom. Id.
The significant burdens an appellant faces in bringing an against-the-weight-of-the-evidence challenge are well expressed in our Supreme Court's opinion in Ivie v. Smith , 439 S.W.3d 189, 205-06 (Mo. banc 2014) :
Appellate courts act with caution in exercising the power to set aside a decree or judgment on the ground that it is against the weight of the evidence. A claim that the judgment is against the weight of the evidence presupposes that there is sufficient evidence to support the judgment. In other words, 'weight of the evidence' denotes an appellate test of how much persuasive value evidence has, not just whether sufficient evidence exists that tends to prove a necessary fact. See White v. Dir. of Revenue , 321 S.W.3d 298, 309 (Mo. banc 2010) (stating that 'weight' denotes probative value, not the quantity of the evidence). The against-the-weight-of-the-evidence standard serves only as a check on a circuit court's potential abuse of power in weighing the evidence, and an appellate court will reverse only in rare cases, when it has a firm belief that the decree or judgment is wrong.
When reviewing the record in an against-the-weight-of-the-evidence challenge, this Court defers to the circuit court's findings of fact when the factual issues are contested and when the facts as found by the circuit court depend on credibility determinations. A circuit court's judgment is against the weight of the evidence only if the circuit court could not have reasonably found, from the record at trial, the existence of a fact that is necessary to sustain the judgment. When the evidence poses two reasonable but different conclusions, appellate courts must defer to the circuit court's assessment of that evidence.
This Court defers on credibility determinations when reviewing an against-the-weight-of-the-evidence challenge because the circuit court is in a better position to weigh the contested and conflicting evidence in the context of the whole case. The circuit court is able to judge directly not only the demeanor of witnesses, but also their sincerity and character and other trial intangibles that the record may not completely reveal. Accordingly, this standard of review takes into consideration which party has the burden of proof and that the circuit court is free to believe all, some, or none *796 of the evidence offered to prove a contested fact, and the appellate court will not re-find facts based on credibility determinations through its own perspective. This includes facts expressly found in the written judgment or necessarily deemed found in accordance with the result reached. Rule 73.01(c). Evidence not based on a credibility determination, contrary to the circuit court's judgment, can be considered in an appellate court's review of an against-the-weight-of-the-evidence challenge.
Id. (internal quotations and citations omitted).
These principles are reflected in the four-step analytical sequence for against-the-weight-of-the-evidence challenges set forth in Houston , 317 S.W.3d at 187, directing that such a challenge:
(1) identify a challenged factual proposition, the existence of which is necessary to sustain the judgment;
(2) identify all of the favorable evidence in the record supporting the existence of that proposition;
(3) identify the evidence in the record contrary to the belief of that proposition, resolving all conflicts in testimony in accordance with the trial court's credibility determinations, whether explicit or implicit; and,
(4) demonstrate why the favorable evidence, along with the reasonable inferences drawn from that evidence, is so lacking in probative value, when considered in the context of the totality of the evidence, that it fails to induce belief in that proposition.
Id. Husband's arguments, at various times, fail in all of these steps. The arguments: (1) fail to identify factual propositions that are actually necessary to sustain the judgment; (2) fail to account for all the favorable evidence in the record; (3) in presenting contrary evidence, fail to screen such evidence for White 's prerequisites, and deference to the trial court's credibility determinations; and (4) as a result of the defects in steps 1 through 3, necessarily fail to complete the requirements of adding up all the pieces in step 4.
Analysis
Point I: Award of Maintenance
In Husband's Point I, he argues that the trial court's award of maintenance was against the weight of the evidence in that Wife does not lack sufficient property to provide for her reasonable needs, and is not unable to support herself through employment.
As our disposition as to Husband's appeal hinges on the proper application of section 452.335,[9] we recite that section in full:
1. In a proceeding for nonretroactive invalidity, dissolution of marriage or legal separation, or a proceeding for maintenance following dissolution of the marriage by a court which lacked personal jurisdiction over the absent spouse, the court may grant a maintenance order to either spouse, but only if it finds that the spouse seeking maintenance:
(1) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and
(2) Is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.
2. The maintenance order shall be in such amounts and for such periods of time as the court deems just, and after *797 considering all relevant factors including:
(1) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;
(2) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;
(3) The comparative earning capacity of each spouse;
(4) The standard of living established during the marriage;
(5) The obligations and assets, including the marital property apportioned to him and the separate property of each party;
(6) The duration of the marriage;
(7) The age, and the physical and emotional condition of the spouse seeking maintenance;
(8) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance;
(9) The conduct of the parties during the marriage; and
(10) Any other relevant factors.
3. The maintenance order shall state if it is modifiable or nonmodifiable. The court may order maintenance which includes a termination date. Unless the maintenance order which includes a termination date is nonmodifiable, the court may order the maintenance decreased, increased, terminated, extended, or otherwise modified based upon a substantial and continuing change of circumstances which occurred prior to the termination date of the original order.
Fatally, as we explain more fully infra , Husband's argument errantly presupposes that the credited evidence considered in initial determinations as to Wife's "reasonable needs," "sufficient property," and "appropriate employment," per section 452.335.1, are exclusive of credited evidence as to the section 452.335.2(1)-(10) factors.
Husband's argument correctly recites that section 452.335.1 requires proof of unmet "reasonable needs"[10] -but, "[r]easonable in light of what ?" Hammer v. Hammer , 139 S.W.3d 239, 244 (Mo. App. W.D. 2004) (emphasis added).
The difficulty is that the statute seemingly offers no guidance to the trial judge in making this determination. In our opinion, the term 'reasonable needs' must be defined in terms of the policies embodied in the ... dissolution law .... Section 452.335 of the [Dissolution of Marriage] Act signals marked departures from the prior law.... There is a new emphasis on the self-sufficiency of *798 both parties following the dissolution[.] ... The emphasis on self-sufficiency does not, however, require us to totally ignore the fact that a marriage did exist.
Brueggemann v. Brueggemann , 551 S.W.2d 853, 857 (Mo. App. ST.L.D. 1977) (en banc) (emphasis added).[11]
Thus, a requesting spouse's reasonable needs are measured "[i]n light of the relevant factors ... enumerated in section 452.335," per the credited evidence from the "entire record (including the length of the marriage, standard of living, differences in earning capacity, foregone career development, and the party's proof of anticipated expenses) in an effort to carry out the directives of the statute in setting a just and realistic award of maintenance." Hammer , 139 S.W.3d at 244 (emphasis in original). Reasonable needs are "relative," and thus "need not be limited to the spouse's actual expenses at the time of dissolution." L.R.S. v. C.A.S. , 525 S.W.3d 172, 189 (Mo. App. E.D. 2017).
There is, of course, a routine procedure for proving 'reasonable needs.' It starts with (1) each party's statement of income and expenses, and (2) each party's statement of marital and non-marital property and liabilities. In projecting expenses, each party seeks to express the anticipated expenses that accord to the desired standard of living. At trial, the expense and income statements are updated and sometimes disputed. The trial judge then decides what is appropriate and reasonable in light of the relevant factors, including those listed in the statute. It is seldom a matter of mathematical precision, and expense submissions are not required to be based on strict necessity. The purpose is to achieve a just result in light of the relevant considerations.
Obviously, expense statements and accompanying testimony are important tools for helping determine reasonable needs; but they are not the only evidence the court can consider in this determination .... Section 452.335, after all, does not mention 'income and expense statements[.]'
Hammer , 139 S.W.3d at 245 (emphasis added). The trial court has the right to credit some, all, or none of the evidence before it-even where a party's statement of income and expenses conflicts with its evidence at trial, such conflict is merely grist for the trial court's fact-finding. See Herschend , 486 S.W.3d at 351-54.
An award of maintenance to the more dependent spouse is appropriate if, consistent with the considerations described in Brueggemann and Hammer , the spouse's reasonable needs are unmet by the cumulative value of his or her: (1) reasonably certain and sustainable income from property,[12] including income from allocated *799 marital property;[13] and (2) reasonably certain income from employment, to the extent and level of employment appropriate (if any).[14]
Here, the trial court found that Wife's total income from employment was $400 per month, and impliedly determined that this was the full extent of her appropriate employment. Pursuant to our standard of review,[15] we must conclude that the trial court found Wife had income from property. The trial court made the following additional findings:
Having considered the marital property apportioned to the parties, the financial resources of the parties, the educational status of the parties, the standard of living during the marriage, the age, physical and emotional condition of the parties, the ability of each spouse to meet his or her needs, and the parties' conduct during the marriage, the Court finds that [Wife] lacks sufficient property to provide for her reasonable needs and is unable to support herself through employment. Accordingly, the Court does award maintenance or support to [Wife]. The Court orders [Husband] to pay [Wife] periodic maintenance of $2,000.00 per month, first payment due September 15, 2016, and monthly on the same day thereafter.... This maintenance order shall be modifiable.
Pursuant to Houston , 317 S.W.3d at 187, Husband's against-the-weight-of-the-evidence argument challenges three predicate facts: (1) Wife's reasonable needs; (2) the sufficiency of her "property to provide for [those] reasonable needs"; and (3) Wife's ability to support herself through employment.
Wife's Reasonable Needs
Husband's brief makes the following argument as to Wife's reasonable needs:
[Wife] testified that she would earn approximately $400 per month teaching preschool at the church two days a week. Her income and expense statement showed that her average monthly expenses would exceed her average monthly income by $5,922.00 considering also the children's expenses and the $1,500 monthly child support that Todd was paying under the court's temporary support order. Leaving out the children's expenses and the $1,500 in child *800 support, her expenses exceeded her projected monthly income by $4,642.00.
(Citations to the record omitted).
Husband is correct that the trial court explicitly found that Wife's employment income was $400 per month. However, the trial court made no explicit findings as the value of Wife's reasonable needs. "[T]he circuit court can believe all, part, or none" of the evidence, J.A.R. v. D.G.R. , 426 S.W.3d 624, 631 (Mo. banc 2014), and we deem fact issues "to have been resolved by the trial court in accordance with its award of maintenance." In re Marriage of Murphy , 71 S.W.3d 202, 206 (Mo. App. S.D. 2002). The trial court could have based its valuation of Wife's reasonable needs on Wife's specific testimony thereon, Wife's income and expense statement, or the extensive evidence relevant to factors in section 452.335.2. Importantly, as to the last consideration, Husband makes no effort at accounting for the credited evidence as to, for example: "[t]he comparative earning capacity of each spouse;" "[t]he standard of living established during the marriage;" "[t]he duration of the marriage;" "[t]he age, and the physical and emotional conditions of the spouse seeking maintenance;" Husband's "ability ... to meet his needs while meeting those of [Wife];" "[t]he conduct of the parties during the marriage;" or "any other relevant factors." Id. Husband does not even account for what "other relevant factors" existed (or not), much less which portions (if any) were credited by the trial court. An against-the-weight-of-the-evidence challenge-as Husband's-must take the existence of sufficient evidence to support both the judgment and its challenged factual proposition as its starting point. See Ivie , 439 S.W.3d at 205-06 ("A claim that the judgment is against the weight of the evidence presupposes that there is sufficient evidence to support the judgment.") (internal quotations and citations omitted).
It must account for "all of the favorable evidence in the record" that could support its "challenged factual proposition," because it must thereafter confront and dispel the probative value attending the cumulative weight of that same supportive evidence. See Houston , 317 S.W.3d at 187 (emphasis added). Husband's failure to comply with this procedure deprives his "argument of any persuasive or analytical value and doom[s] [his] challenge to defeat[.]" In re Marriage of Scrivens , 489 S.W.3d 361, 368 (Mo. App. S.D. 2016).
Deprived of the analytical starting point of Wife's reasonable needs, Husband's argument simply cannot succeed in showing that the award of maintenance exceeded those needs.[16] This is so regardless of what Husband might demonstrate about Wife's property or employment. Ex gratia , we summarily address the main thrusts of those remaining challenges.
Wife's Property
Husband suggests that the trial court's finding that Wife lacked sufficient property to meet her reasonable needs was against the weight of the evidence. In support, Husband directs us to the fact that the trial court awarded Wife property with the value of $457,131.12-to-wit: (1) $330,000 for her interest in her chicken operation, or half the equity if the operation were sold; (2) other allocated marital assets worth $105,999.94; (3) a bank account worth $4.00; and (4) $21,131.18 to *801 Wife for "various expenses" owed by Husband.
Husband's cites Stroh v. Stroh , 454 S.W.3d 351 (Mo. App. S.D. 2014), for the principle that while Wife need not "deplete or consume" her allocated portion of marital assets before maintenance would be appropriate, the "interest income from the investment of marital property" should be considered in evaluating "the necessity for, and amount of, maintenance." Id. at 358 (internal quotation and citation omitted). We do not disagree with Husband's recitation of the law. As Stroh indicates, Wife's property is considered only insofar as the reasonably certain and sustainable income therefrom. Id. Wife need not "invade the principal," to borrow the phrase. Nationsbank, N.A. v. Tegethoff , 18 S.W.3d 22, 26 (Mo. App. E.D. 2000).
The trial court made no explicit findings as to Wife's income from property, and Husband makes no effort at showing any such income from Wife's property. As such, this challenge is wholly unavailing.
Wife's Employment
Husband makes, by our count, either six or seven arguments challenging the trial court's finding that Wife was unable "to support herself through employment," per section 452.335.1(2).
Section 452.335.1(2) requires a spouse requesting maintenance to prove inability "to support [herself] through appropriate employment or [that such spouse ] is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home. " Id. (emphasis added).
None of Husband's arguments properly address the credited evidence as to the latter alternative consideration in section 452.335.1(2). We will "affirm the trial court's decision on any basis supported by the [record,]" Ballard , 77 S.W.3d at 118, and the success of an against-the-weight-of-the-evidence challenge depends on the appellant's initial identification of a "challenged factual proposition, the existence of which is necessary to sustain the judgment [.]" Houston , 317 S.W.3d at 188. Husband's relevant evidentiary challenge, and supporting argument, is solely to Wife's inability to support herself through appropriate employment, but the existence of this factual proposition is merely sufficient to sustain the judgment, not necessary. See id.
In other words, Wife's duty to support herself by working at a job beyond the daycare role set forth in the trial court's judgment (specifically, as a nurse or at the chicken operation, as Husband suggests) is only one of two ways Wife could have meet her burden below, per the explicit text of section 452.335.1(2).[17] Thus, on appeal, Husband's burden to successfully confront the factual predicate of Wife's income from employment (as Husband suggests from her work as a nurse or at the chicken operation) is only one of two factual prerequisites Husband had to successfully *802 confront per section 452.335.1(2) (or at least its explicit text) namely: (1) the appropriateness, reasonable certainty, and amount of Wife's income as a nurse, chicken operation employee, or other appropriate employment; and (2) that Wife is not "the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home."
As to Husband's arguments per the appropriateness and ability of Wife to support herself through employment (either, as Husband suggests, a nurse or through the chicken operation)-the trial court made the explicit finding that Wife "is unable to support herself through employment." In an evidentiary challenge-whether substantial evidence or against the weight of the evidence-the general rule is that all evidence will be treated as having been found in accord with the judgment, and that we defer to all explicit and implicit credibility determinations of the trial court.
Of course, the amount of uncredited evidence on this issue was also extensive, and Husband points to some of it in his argument. While such evidence may be contrary to the judgment, it does not mean it is properly considered in an against-the-weight-of-the-evidence challenge. Houston , 317 S.W.3d at 187, allows for the consideration of certain evidence contrary to the judgment in the third and fourth steps of its analytical sequence-i.e. , where the appellant demonstrates: (1) the evidence was offered by a party with no burden of proof as to the ultimate issue for which that evidence is offered; (2) the efficacy of that evidence is "not based on a credibility determination"; and (3) the evidence is uncontested, uncontradicted, and not "disputed in any manner." See White , 321 S.W.3d at 304-05. In other words, we may only consider contrary evidence in an against-the-weight-of-the-evidence challenge when the necessary effect of that evidence "is legal, and there is no finding of fact to which [we] defer." White , 321 S.W.3d at 308. Husband does not support any of his arguments as to Wife's employment with evidence consistent with White 's prerequisites, and his argument must therefore fail.
Husband also argues that the trial court's award of maintenance was against the weight of the evidence because it was "without limit[ ] in time." He suggests that instead, "[t]he court might have awarded [Wife] rehabilitative maintenance, but it evidently did not even consider that."[18] We observe that this argument does not fit into any of Husband's factual challenges, violates the dictates of Houston , 317 S.W.3d at 188, and would be unavailing on those bases alone.
[T]here is a judicial preference for awards of maintenance that are of unlimited duration. Maintenance may only be limited in duration where ... the financial condition of the parties is subject to an impending change. The trial court should not prospectively terminate maintenance if ... no reasonable expectation exists that the circumstances of the parties will be substantially different in the future.
Herschend , 486 S.W.3d at 356 n.7 (internal quotation and citation omitted). Husband points to no credited evidence of an impending change warranting the time limitation of the maintenance award. If Husband believes such a change will occur, his remedy is to seek a modification of maintenance *803 at that time. See Cureau v. Cureau , 514 S.W.3d 685, 692-93 (Mo. App. E.D. 2017).
Finally, we have not failed to notice-neatly tucked in the middle of these many sub-arguments-the rather unsavory (and meritless) position Husband takes up, in suggesting that because there was evidence that Wife received certain "gifts" while they were separated, such income should weigh (in some unspecified way) against the award of maintenance. These "gifts" arose from the following situation. Husband, still married to Wife, took up with a younger woman and had a child with her. The lives of Wife and the Children were thrown into chaos, and the Children required therapy due to Father's outlandishly inappropriate physical, verbal, and emotionally destructive behavior. During the pendency of the dissolution action, Wife and Husband lived separately. Husband maintained significant control over the marital estate. Wife absorbed the lion's share of the burden of the Children's care, as well as their significant expenses. Wife became financially "underwater" after Husband violated the standing court order, refusing Wife's pleas for assistance with Husband's half of the Children's expenses. Neighbors and various third parties provided "gifts" to Wife to assist her and the Children. Such gifts were often in the form of Wal-Mart gift cards, and sometimes money. Husband now asks this Court to weigh these gifts in his favor, and against Wife, and to convict the trial court of error for not transforming the benefits rendered by others to his wife and his seven children (benefits in his capacity, if not his inclination, to render), and redirect such benefits to himself. While further discussion is tempting (and perhaps warranted), we refrain, and simply reject this line of argument.
The trial court's award of maintenance was not against the weight of the evidence. Point I is denied.
Point II: Child Support
Husband's Point II, requesting remand for reconsideration of the amount of child support if maintenance is altered, is conditioned on our favorable disposition as to his Point I. As we reject Point I, we must also reject Point II. Point II is denied.
The judgment of the trial court is affirmed.
JEFFREY W. BATES, J.-concurs
DANIEL E. SCOTT, J.-concurs

On September 7, 2016, a hearing was held on Wife's "motion to reinstate" or "to reopen" filed on August 22, 2016-not included in the record on appeal-pertaining to "items missing from the home and other issues." Also noticed up for hearing on the same day was Husband's "motions to modify temporary orders that were issued in March 2016,"-not included in the record on appeal-filed September 2, 2016. After hearing evidence on Wife's motion, the parties stipulated that items taken from the home by Husband had a value of $2,000, and would be awarded to Husband as part of his personal property. The parties also agreed that Husband would return to Wife her mother's dresser, and Wife would return to Husband four utility lights used in the chicken houses. The parties also agreed that any monies received from High Road Land and Cattle, LLC, would go into an escrow account, separate from the "chicken account." The trial court stated "that will be removed from the original order and that will be kept separate ... we'll just be dealing with the chicken account then." The record indicates the parties reached a stipulation on the matters contained in Husband's motion.

This amount was derived by Wife from one-half of the equity in the chicken operation ($583,370), and one-half of the value of the vehicles, equipment, machinery and other personal property associated with the chicken operation ($77,300), or one-half of $660,670.

That was secured by a four tracts of real estate owned jointly by the parties.

The values for the marital property are calculated as best we can discern from the record before us. The Judgment and Decree of Dissolution made minimal explicit findings as to the actual values of allocated marital property. The cumulative figure as to the value of the allocated marital property does not include any monies potentially received from the dissolution of High Road Land and Cattle Company, LLC.

Husband does not challenge these portions of the judgment.

Herschend v. Herschend , 486 S.W.3d 346, 351-52 (Mo. App. S.D. 2015) ; Ansley v. Ansley , 15 S.W.3d 28 (Mo. App. W.D. 2000), cited by Husband for Point I as one of the four "authorit[ies] upon which [Husband] principally relies[,]" Rule 84.04(d), accurately recites this principle.
All rule references are to Missouri Court Rules (2017).

In re Marriage of Otis , 479 S.W.3d 142, 145 (Mo. App. S.D. 2015) (internal quotation and citation omitted).

Ballard v. Ballard , 77 S.W.3d 112, 118 (Mo. App. W.D. 2002).

All references to statutes are to RSMo 2000, unless otherwise indicated.

We observe some references in the case law to the effect that the sole prerequisite for an award of maintenance is proof of a spouse's unmet "reasonable needs" per section 452.335.1 (the factors in section 452.335.2 being excluded for this purpose)-thus, if section 452.335.1 is satisfied, there should be some award of maintenance, and the only question is the amount (for which the section 452.335.2 factors are considered). See , e.g. , Kratzer v. Kratzer , 520 S.W.3d 809, 814 (Mo. App. E.D. 2017) ; Brooks v. Brooks , 957 S.W.2d 783, 786 (Mo. App. W.D. 1997). We interpret such language as a recognition that for a trial court to make an award of maintenance, it is necessary (but not sufficient ) that the requesting spouse demonstrate unmet reasonable needs. The purpose and effect of section 452.335 is to compel the more independent spouse to "provid[e] support [for] the more dependent spouse ... in light of the statutory factors." Hammer v. Hammer , 139 S.W.3d 239, 244 (Mo. App. W.D. 2004) (emphasis added).

Brueggemann 's interpretation of section 452.335 has been roundly adopted (explicitly and implicitly) by our appellate courts. See , e.g. , L.R.S. v. C.A.S. , 525 S.W.3d 172, 189 (Mo. App. E.D. 2017) ; In re Marriage of Cornella , 335 S.W.3d 545, 553-54 (Mo. App. S.D. 2011) ; Hammer , 139 S.W.3d at 244 ; Nichols v. Nichols , 14 S.W.3d 630, 636 (Mo. App. E.D. 2000) ; M.A.Z. v. F.J.Z. , 943 S.W.2d 781, 788-89 (Mo. App. E.D. 1997) ; McMullin v. McMullin , 926 S.W.2d 108, 112 (Mo. App. E.D. 1996) ; cf. , Smith v. Smith , 632 S.W.2d 91 (Mo. App. E.D. 1982) ; LoPiccolo v. LoPiccolo , 581 S.W.2d 421, 424 (Mo. App. E.D. 1979).

Ansley , 15 S.W.3d at 33 ("In determining whether a party has sufficient assets to meet their reasonable needs, the court generally only considers the income-producing, or potentially income-producing, property."). Income from property is not sustainable if it is more properly viewed as consumable rather than income-producing-thus, it "is well-established that a party is not required to consume her share of marital property before receiving maintenance[.]" Passanante v. Passanante , 364 S.W.3d 690, 694 n.2 (Mo. App. E.D. 2012).

This determination as to income from property does not consider the maintenance or child support to be awarded (if any), or which has been temporarily awarded during the pendency of the dissolution. See McHugh v. Slomka , 531 S.W.3d 588, 597 (Mo. App. E.D. 2017) ; Civ. Pro. Form No. 14, "Line 2b, Adjustment to gross income for maintenance being paid," Comment A ("If the court is establishing both child support and maintenance, the court shall first determine the appropriate amount of maintenance. This amount shall be included as an addition to the gross income ... of the parent receiving the maintenance and as a reduction in the gross income ... of the parent paying the maintenance.").

See section 452.335.1(2); In re Marriage of Cornella , 335 S.W.3d at 553 ; Newport v. Newport , 759 S.W.2d 630, 634-35 (Mo. App. S.D. 1988).

The record does not reveal-and neither party asserts-that a request for specific findings of fact was made in compliance with Rule 73.01(c)-therefore, we deem all fact issues "to have been resolved by the trial court in accordance with its award of maintenance." In re Marriage of Murphy , 71 S.W.3d 202, 206 (Mo. App. S.D. 2002).

We do not mean to suggest that this claim (so stated) would necessarily have been successful had it been presented in compliance with our standard of review. See Herschend , 486 S.W.3d at 352-54.

As we discuss in this opinion, supra , Wife's award of maintenance was to be issued based not only on the explicit discrete factors in section 452.335.1(1)(2), but in light of the credited evidence as to the non-exclusive factors set forth in section 452.335.2(1)-(10). Thus, to succeed in this appeal, Husband's appeal must have accommodated the factual prerequisites as to all those explicit factors, and any factors the trial court could have (without error) considered to reach its award of maintenance. No doubt, this is a high threshold for appellate advocacy. However, Husband had the opportunity to request specific written findings from the trial court-he elected to gamble on the outcome, in the strategic hope and calculation that Wife, not he, would be faced with the stringent and burdensome standard of review he now faces.

Husband points to nothing in the record in support of his claim that the trial court "did not even consider" rehabilitative maintenance, nor the foundation for the legal significance he apparently assigns to the trial court's internal thought process. Regardless, we affirm on any basis supported by the record. Ballard , 77 S.W.3d at 118.