

# Missouri Court of Appeals

## Southern District

### Division Two

| | |
|---|---|
| In Re The Marriage of:<br>JANETT LEE MORGAN and<br>JOHN WAYNE MORGAN<br><br>JANETT LEE MORGAN,<br><br>     Petitioner-Respondent,<br><br>v.<br><br>JOHN WAYNE MORGAN,<br><br>     Respondent-Appellant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   No. SD36815<br>)<br>)   **Filed:  May 4, 2021**<br>)<br>) |

### APPEAL FROM THE CIRCUIT COURT OF TEXAS COUNTY

Honorable Douglas D. Gaston

**<u>AFFIRMED</u>**

John Wayne Morgan ("Husband") appeals the amended judgment ("the judgment") that dissolved his marriage to Janett Lee Morgan ("Wife").  His first four points claim the trial court erred in classifying a portion of his shares of stock in a family-owned corporation as marital property.  His fifth and sixth points claim the trial court erred in its valuation of a hangar lease awarded to Husband.

Husband's first four points fail because Husband fails to allege, let alone demonstrate, that the challenged classification rendered the overall property distribution inequitable.  In points five and six, Husband's argument ignores evidence favorable to the ruling and again fails to demonstrate why the trial court's valuation of the hangar resulted in

1

an inequitable division of property. In the absence of such a showing, we must affirm the presumed-correct judgment of the trial court.

## Background[1]

Husband and Wife married in 1998. Husband had worked as a pharmacist since 1972. In 1981, prior to his marriage to Wife, Husband formed Kidi, Inc., ("Kidi"), a C corporation, which owned (among other things) Cabool Pharmacy, where Husband worked as a pharmacist from 1981 until he retired in 2015. Wife had also worked at Cabool Pharmacy for four or five years during the parties' marriage as a pharmacy tech, and she was paid as an employee for all of her work there. Wife had also worked intermittently at the Cabool State Bank during the marriage.

In addition to Cabool Pharmacy, Kidi owned many other assets that the trial court found "were used primarily, and nearly exclusively, for [the parties'] personal use." These assets included two airplanes, vacation timeshares, and automobiles provided for the parties' personal use, including a Ford Edge and two Jaguars. At all times since its creation, Husband was the majority shareholder of Kidi's stock, owning almost 51%.[2] With the exception of 2,129 shares that he inherited from his mother,[3] Husband had acquired all of his shares of Kidi stock prior to the marriage, and Kidi's single largest asset was its Vanguard brokerage account.

---

[1] We recite the evidence in the light most favorable to the judgment, and we credit all evidence and reasonable inferences in favor of the judgment, disregarding all unfavorable evidence and inferences. *In re Marriage of Schubert v. Schubert*, 561 S.W.3d 787, 791 (Mo. App. S.D. 2018). Any evidence unfavorable to the judgment is cited only to provide context for Husband's claims of error.

[2] The remaining shareholders of Kidi are relatives of Husband. Husband testified that he has always been the majority shareholder in the business and had control of the corporation.

[3] The parties agreed that Husband's shares of stock were his separate, non-marital property, but they disputed the value of those shares.

Husband and Wife disagreed about Kidi's value. The trial court found Wife's testimony more persuasive on this issue, and it accepted her figure of $1,719,771.[4] The trial court also found that Kidi's value had increased by $1,069,771 during the marriage, and that at least a portion of Husband's 50.86% ownership of the "retained profits" of the corporation ($544,085.53) "should be *deemed* marital property" (emphasis added).

The judgment awarded all of Husband's shares of Kidi stock to Husband (valued by the trial court at $426,553.22). The judgment also awarded Husband the "Marital Value of Retained Profits" of Kidi, valued as $544,085.53. Based upon evidence credited by the trial court, it found that Husband had artificially kept substantial amounts of money in the corporation that would otherwise have been paid to him in salary and dividends – an income stream that would have been categorized as marital property. As a result, the trial court found that "the fairest division is to consider half of Husband's 50.86% ownership of [Kidi] shares in the retained profits to be marital property."[5] To equalize what the trial court believed to be a disproportionate division of property, the judgment ordered Husband to "pay to Wife the sum of $145,324.[28] as an equalization payment."

We will recite additional evidence as necessary to address Husband's points on appeal.

### Standard of Review

> As with any court-tried case, the judgment in a dissolution case will be affirmed if it is supported by the evidence; it is not against the weight of the evidence; and it does not erroneously declare or apply the law. *Jones v.*

---

[4] Around December, 2015, Kidi sold Cabool Pharmacy for $650,000, which included the real estate and the assets required to run the pharmacy.

[5] As Wife correctly points out in her brief, this phraseology used by the trial court uses contradictory terms and is ambiguous in that shares of stock in a corporation are different from the corporation's retained earnings. However, because the parties agreed that Husband's shares of Kidi were his separate property, and Husband did not pursue his request for a finding of fact on this fact issue in a post-judgment motion, we interpret the trial court's meaning in the light most favorable to the judgment. **Stone v. Stone**, 450 S.W.3d 817, 820 (Mo. App. W.D. 2014).

3

*Jones,* 277 S.W.3d 330, 334 (Mo. App. W.D. 2009). We view the evidence in the light most favorable to the dissolution decree and disregard any contrary evidence or inferences therefrom. *Id.* We defer to the trial court's credibility determinations. *Id.* Where the issue on appeal is the trial court's application of section 452.330.1[ ] in dividing marital property, "this court will interfere only where the division is so unduly favorable to one party that it constitutes an abuse of discretion." *Id.* at 337 (internal quotation omitted). We presume that the division of property was correct; the party challenging it bears the burden of overcoming the presumption. *Sullivan v. Sullivan,* 159 S.W.3d 529, 534 (Mo. App. W.D. 2005).

**Stone**, 450 S.W.3d at 820.

## Analysis

*Points 1 – 4 – Classification of Kidi Stock Shares*

Husband's first four points claim the trial court erred in classifying "half of Husband's ownership of [Kidi] shares to be marital property[.]"[6] Because these points all fail for the same reasons, we address them together.

"It is well settled that 'the mere erroneous declaration of what is or is not marital property, where the decree is nonetheless fair, will not require reversal.'" *Burk v. Burk*, 936 S.W.2d 144, 145 (Mo. App. S.D. 1996) (quoting *In re Marriage of Garrett*, 654 S.W.2d 313, 316 (Mo. App. S.D. 1983)). "Appellate courts do not reverse any judgment unless they find that the error committed by the trial court against the appellant materially affected the merits of the action." *Id.* "Absent a contention in the point relied on that the erroneous classification resulted in an unfair overall division of property, the claim has been abandoned and reversal is not required." *Stroh v. Stroh*, 454 S.W.3d 351, 363 (Mo. App. S.D. 2014).

**Alport v. Alport**, 571 S.W.3d 680, 686-87 (Mo. App. W.D. 2019).

As Wife correctly points out in her brief, the trial court did not classify half of Husband's shares in Kidi as marital property. Instead, after awarding all of Husband's shares of Kidi stock to him, the trial court found that

---

[6] While Point 1 claims error in "considering half of Husband's ownership of [Kidi] shares *in the retained profits* to be marital property[,]" the argument section makes clear that, as in points 2, 3, and 4, Husband is challenging the trial court's finding "a marital interest in [Husband]'s non-marital stock."

> Husband had substantial control – if not virtually sole control – over [Kidi] as a majority shareholder, Chairman of the board, and President, and exhibited a pattern of using the corporate shield regarding property for personal use.
>
> As a controlling shareholder of [Kidi], Husband chose to retain in the corporation the profits of [Kidi] he earned during the marriage.

Based upon this artificial suppression of what would otherwise have been marital income, the trial court ordered Husband to make an equalization payment to Wife to counter that inequity. By challenging a ruling that the trial court did not make, Husband's argument preserves nothing for our review.

Even if the trial court had incorrectly classified his shares of Kidi stock as marital property, Husband's brief does not claim, let alone demonstrate, that the allegedly incorrect classification made the overall property distribution unfair.[7] "Absent establishing before this Court that the property was in fact misidentified as marital *and* that such misidentification of the property did in fact cause the division of property to be unjust, [Husband] has abandoned these claims of error." *Id.* at 687 (emphasis added). *See also Stroh*, 454 S.W.3d at 363.

Points 1 through 4 fail.

*Points 5 and 6 – Value of Hangar Lease*

Husband's fifth and sixth points challenge the trial court's valuation of a long-term lease on an airplane hangar that housed the Kidi-owned 421 Cessna that Husband flew primarily for personal trips. Because both points fail for the same reason, we address them together.

---

[7] Husband attempts to correct this deficiency in his Reply brief, but a reply brief is used only to reply to arguments made by a respondent and not to raise new arguments on appeal. *Terpstra v. State*, 565 S.W.3d 229, 240 n.7 (Mo. App. W.D. 2019) (refusing to review defendant's separate assertion of prejudice set forth for the first time in his reply brief). "[W]e do not review an assignment of error made for the first time in the reply brief." *Id.* (quoting *Arch Ins. Co. v. Progressive Cas. Ins. Co.*, 294 S.W.3d 520, 524 n.5 (Mo. App. W.D. 2009)).

Point 5 claims the trial court erred in valuing the hangar lease at $100,000 because no substantial evidence supported that value in that Wife admitted that she did not know the value of the lease, and Husband presented both his own and expert testimony that the fair market value of the lease did not exceed $30,000. Husband's sixth point claims the finding was against "the greater weight of the evidence[.]"

Husband is a licensed pilot, and he flew airplanes throughout the duration of the marriage. Husband and Wife built the hangar on land owned by the city of Cabool ("the City") at the Cabool municipal airport. Husband then entered into a long-term lease with the City. The lease term was for the duration of Husband's life, plus the life of his lineal descendants in existence at the time the lease was executed. It also required that an airplane remain in the hangar, and it does not allow Husband to assign the lease to anyone else without the City's prior approval. Kidi paid Husband and Wife about $2,000 per month to lease the hangar for the purpose of housing the Kidi Cessna.

Husband testified that the parties had used $60,000 in marital funds to build the hangar, and they expended additional funds on the hangar over the last 17 years. The lease required Husband to insure the hangar for at least $60,000, but Husband testified that the value of the hangar was only $30,000. Husband also called Doug Jones ("Mr. Jones"), a long-time pilot on the City's airport board who helped draft the leases for the City. Mr. Jones testified that he believed it cost $60,000 to build the hangar at issue.

Wife testified that the hangar was worth $100,000 because Husband told her that was what it cost to build. Wife testified that Husband told her "the door cost $60,000 in itself." The trial court valued the hangar at $100,000 and awarded it to Husband.

6

An appellant challenging that the trial court's judgment was not supported by substantial evidence must successfully complete the following distinct analytical steps:

> (1) identify a challenged factual proposition, the existence of which is necessary to sustain the judgment;
>
> (2) identify all of the favorable evidence in the record supporting the existence of that proposition; and,
>
> (3) demonstrate why that favorable evidence, when considered along with the reasonable inferences drawn from that evidence, does not have probative force upon the proposition such that the trier of fact could not reasonably decide the existence of the proposition.

> *Houston v. Crider*, 317 S.W.3d 178, 187 (Mo. App. S.D. 2010).

***D.D.W. v. M.F.A.***, 594 S.W.3d 274, 280 (Mo. App. S.D. 2020) (internal footnote omitted).

An against-the-weight-of-the-evidence challenge requires completion of four sequential steps:

> (1) identify a challenged factual proposition, the existence of which is necessary to sustain the judgment;
>
> (2) identify all of the favorable evidence in the record supporting the existence of that proposition;
>
> (3) identify the evidence in the record contrary to the belief of that proposition, resolving all conflicts in testimony in accordance with the trial court's credibility determinations, whether explicit or implicit; and,
>
> (4) demonstrate why the favorable evidence, along with the reasonable inferences drawn from that evidence, is so lacking in probative value, when considered in the context of the totality of the evidence, that it fails to induce belief in that proposition.

***Houston***, 317 S.W.3d at 187.

Husband's arguments fail because they ignore or make only minimal reference to the evidence favorable to the ruling and rely instead on evidence in his favor that the trial court was not required to credit. *See **D.D.W.***, 594 S.W.3d at 280.

Husband ignores Wife's testimony that Husband told her that it cost $100,000 to build the hangar. And Husband ignores his own testimony that Kidi paid Husband and Wife up to $2,000 per month to rent the hangar to house its airplane. A reasonable inference from that evidence is that Husband (and his lineal descendants), having been awarded the hangar lease by the trial court, would continue to receive that rental income into the future.

Husband's failure to identify and acknowledge all of the evidence favorable to the trial court's valuation prevented him from demonstrating how that favorable evidence might not have probative force upon the issue such that the trial court could not reasonably rely upon it in determining the value of the hangar lease – the third and final step necessary for a not-supported-by-substantial-evidence challenge. *Houston*, 317 S.W.3d at 188.

That same failure also precluded Husband from attempting to demonstrate that the evidence relied on by the trial court was so lacking in probative value, when considered in the context of the totality of the evidence, that it failed to induce belief that the hangar lease was worth $100,000 – the final step necessary in an against-the-weight-of-the-evidence challenge. *Id.* at 188-89. Those failures render Husband's arguments analytically worthless. *See id.* at 189.

Points 5 and 6 also fail, and the presumed-correct judgment of the trial court is affirmed.

DON E. BURRELL, J. – OPINION AUTHOR

JEFFREY W. BATES, P.J. – CONCURS

GARY W. LYNCH, J. – CONCURS